Samuel Billings, Respondent, *v.* Leslie W. Russell et al., Impleaded, etc., Appellants.

The fact that a mortgage was given, or *it seems* that property was transferred, by a debtor for a valuable consideration, is not, as a proposition of law, inconsistent with the existence of an intent on the part of the debtor to defraud his creditors, or of such knowledge thereof, on the part of the mortgagee or purchaser as will avoid the mortgage or conveyance, and in this regard no distinction can be made between the consideration furnished by an existing debt and that arising in any other manner. When there is an actual intent to defraud, no form in which the transaction is put can shield the property transferred from the claim of creditors.

Proof, therefore, that a mortgage executed by an insolvent debtor was given to secure a debt actually owing by the mortgagor does not, as matter of law, disprove the existence of a fraudulent intent on the part of the debtor.

*Auburn Ex. Bank* v. *Fitch* (48 Barb. 344), *Archer* v. *O'Brien* (7 Hun, 146), *Jewett* v. *Noteware* (30 id. 192), *Bedell* v. *Chase* (34 N. Y. 386), distinguished.

*Billings* v. *Billings* (31 Hun, 65), reversed.

(Argued December 14, 1885 ; decided January 19, 1886.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, made November 19, 1883, which reversed a judgment in favor of defendants, Russell & Sawyer, entered upon the report of a referee. (Reported below, 31 Hun, 65.)

This action was brought to foreclose a mortgage. Said defendants were judgment creditors of the mortgagor and defended on the ground that the mortgage was fraudulent and void as against the creditors of said mortgagor.

The facts so far as material are stated in the opinion.

*Leslie W. Russell* for appellants.   Where, upon appeal to the General Term from a judgment in an action tried by the court, the record does not contain the evidence, but the appeal is heard and determined solely upon the findings of fact and law, in order to succeed it is incumbent upon the appellant to show that the trial court could not, in any view of the facts found, properly order the judgment. (*Ag. Ins. Co.* v. *Barnard*, 96 N. Y. 525; *Van Tassel* v. *Wood*, 76 id. 614.)   The question of fraudulent intent is one of fact.   (2 R. S. 137, § 4; *Warner* v. *Blakeman*, 4 Keyes, 487.)   A fraudulent contract like the one here cannot be used to defeat the judgment creditors of an insolvent. (*Stearns* v. *Gage*, 79 N. Y. 102, 107; *Parker* v. *Conner*, 93 id. 118, 128.)   The debt for which the mortgage was given may be valid and remain, but the security attempted to be put ahead of the appellants' judgment cannot stand.   (*Waterbury* v. *Sturtevant*, 8 Wend. 353, 361; *Garland* v. *Rives*, 4 Rand. 282; 15 Am. Dec. '756, 766, 767; *Lowry* v. *Pinson*, 2 Bailey's Law, 324; 23 Am. Dec. 140; *Shelley* v. *Boothe*, 73 Mo. 74; 39 Am. Rep. 481.)

*C. A. Kellogg* for respondent.   If the property of a debtor is applied upon a *bona fide* debt the office of the statute is fulfilled, even if it be done with general design to hinder and delay other creditors, that not being the fraud, contemplated. (*Auburn Ex. Bk.* v. *Fitch*, 48 Barb. 344; *Murphy* v. *Moore*, 23 Hun, 98; *Hale* v. *Stewart*, 7 id. 591; *Roeber* v. *Bowe*, 26 id. 557; *Waterbury* v. *Sturtevant*, 18 Wend. 353; *Jewett* v. *Noteware*, 30 Hun, 192; *Cowenhoven* v. *Hart*, 21 Penn. St. 495.)   A debtor may prefer one creditor to another and such creditor may acquiesce in that preference. (*Archer* v. *O'Brien*, 7 Hun, 150; *Redell* v. *Chase*, 34 N. Y. 388.)   The intent meant by the statute must be the intent on the debtor's part to keep from his creditors something they had a right to have applied on their debts. (*Hale* v. *Stewart*, 7 Hun, 591; *Archer* v. *O'Brien*, id. 150; *Auburn Ex. Bk.* v. *Fitch*, 48 Barb. 353, 355.)   There could be no such intent in this case as the mortgage only applied the property to the security of a

*bona fide* debt and no more. (48 Barb. 344; 30 Hun, 192; Wait on Fraud. Cont. 513; 7 Hun, ·591, 150; 40 id. 194; *Roeber* v. *Bowe,* 26 id. 557; *Seymore* v. *Wilson,* 19 N. Y. 421; *Weaver* v. *Barden,* 49 id. 300; 21 Penn. St. 495.) The debtor had a right to secure plaintiff and the latter had a right to allow him to remain on the premises as long as he pleased, as against his mortgage, and no other creditor could say he was injured by plaintiff's leniency. (48 Barb. 351.) Although the referee has characterized the mortgage as fraudulent and void, that does not change its essential character as made out by the other findings. (*Coleman* v. *Burr,* 93 N. Y. 17–31.) The referee's findings are inconsistent and those should be followed which are most favorable to the defeated party and others disregarded. (*Schwinger* v. *Raymond* 83 N. Y. 192; *Bonnell* v. *Griswold,* 89 id. 122.)

Ruger, Ch. J. Owing to the method in which this case is presented by the record, the question of fact discussed by the .General Term, does not seem to have been properly before that tribunal. None of the evidence taken on the trial is contained in the error book, and the case was considered below, as it must be here, solely upon the facts found by the referee. It was, therefore, impossible for the General Term to review the case upon the facts, as they were not before it, and its order of reversal, must have been based upon assumed errors of law to which our right of review is necessarily confined. (*Case* v. *Phelps,* 39 N. Y. 164.) This limitation upon the right of review is further imposed by the language of the order of reversal which does not state, that it was based upon questions of fact. In such case the Code requires us to assume that the order was founded upon errors of law alone, and unless such errors are discovered in the findings of the referee the order of reversal cannot be sustained. (§ 1338, Code of Civil Pro.) The referee has found that the mortgage in suit was given by the mortgagor to secure a debt actually owing by him to the plaintiff, but " with the intent to hinder and delay his creditors, and for the purpose of placing the lands and premises

described in the complaint, beyond the reach of his said creditors, and securing the use and retaining the possession thereof as a home for himself and family," and that the same was received by the plaintiff " with the full knowledge of the aforesaid intent and purpose on the part of said George Billings, and with a like intent and purpose on his own part accepted and received said bond and mortgage." As a conclusion of law the referee found that said mortgage was " fraudulent and void as against the creditors of said George Billings."

The statute relating to fraudulent conveyances provides in express language, that every conveyance of any estate or interest in lands, made with intent to hinder, delay or defraud creditors, shall, as against such creditors, be void. It is further provided that in all cases arising under this statute the question of fraudulent intent " shall be deemed *a question of fact and not of law,*" and that it shall not be so construed as to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser, had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor. (Tit. 3, chap. 7, part 2 of R. S.)

It thus appears that the finding of the referee is stated substantially in the language of the statute, and must be deemed conclusive as to the intent with which the mortgage was given, unless some controlling fact is also found, which nullifies it, and renders the conclusion of law predicated thereon, erroneous. It is inferable from the opinion of the court below that it supposed such a fact was discovered, in the finding that the mortgage was given for a valuable consideration. We are of the opinion, however, that the fact of the payment of a valuable consideration upon a transfer of property is not, as a proposition of law, inconsistent with the existence of an intent to defraud, and that in the application of this principle, no distinction can be made between the consideration furnished by an existing debt, or one arising in any other manner. It is undoubtedly evidence, and usually strong evidence, of the intent with which the conveyance is made, but is simply a circum-

stance to be considered by the court in determining the question of intent. The statute itself declares all conveyances made with a fraudulent intent absolutely void, except in the case of those made upon a good consideration and in ignorance on the part of the purchaser of the fraudulent design of his grantor. It contains, therefore, the strongest implication that the payment of a valuable consideration is not inconsistent with the existence of an intent to defraud, and of such knowledge on the part of the purchaser, of the fraudulent design, as will avoid a conveyance made to him, even though accompanied by the payment of an adequate consideration. The vice in the argument of the court below, if any there is, seems to be in its assumption, that the mere payment of a good consideration by the vendee, upon the transfer of property by an insolvent debtor, as matter of law disproves the existence of a fraudulent intent in such a transaction. It seems to us that this very case illustrates the error contained in such an assumption.

The debtor here was enabled by the inducement, held out to his creditor, in the offer to secure his debt, to obtain from him an assurance that the property mortgaged should be so held and protected by the mortgage from other creditors, as to enable the mortgagor to occupy and enjoy it for an indefinite time, for the benefit of himself and his family. Although the form of the transaction was that of security for a debt, its real object and design, was to so incumber the property by an apparent lien, as to mislead creditors and enable the debtor to possess and enjoy its beneficial fruits. The effect of the transaction was really to diminish the actual value of the security given, and enable the debtor to secure the difference, between the present value of a security payable in the future without interest, and the present value of the land mortgaged. This was property and justly belonged to the creditors of the insolvent debtor, but was practically withdrawn from them by the transaction.

It is argued, if the debtor retains any interest in the property mortgaged, that such interest is property, and can be reached by the creditor, and, therefore, he is not defrauded. It is possible that this might be so if the whole tran-

saction was made known, but the vice here is the imposition of a fictitious, because unenforceable incumbrance, equal to the entire value of the property mortgaged. It is no answer to such a transaction, to say that the same result could have been accomplished by lawful proceedings, taken by the voluntary action of the creditor. It was not so done, and whether it ever would have been accomplished in that way is purely a matter of conjecture. The continued possession of the premises by the debtor was here imposed as the condition of giving the security. Other situations can readily be conceived where the transfer of property, for a valuable consideration, may be made the cover for fraudulent practices. Exchanges by which one kind of property is converted into another more easily concealed or transported; the incumbrance of visible and unavailable property, and the retention of that which is convertible, or even the reverse of this, and other cases, where the aggregate value of the debtor's property is not diminished, but an apparent obstacle to a creditor's proceedings is created, are among the methods by which frauds may be perpetrated, by an insolvent debtor. Such transactions can be justified upon the reasoning of the court below, but they are in fact, fraudulent and condemned by the statute. (*Pettit* v. *Shepherd*, 5 Paige, 493, 501).

The cases cited by the General Term to sustain the position taken by it do not seem to us, to bear out the proposition advanced. The case of *Auburn Ex. Bank* v. *Fitch* (48 Barb. 344) was a review by the General Term upon questions of fact of the judgment of the trial court in favor of the plaintiff, and the reversal was based altogether upon alleged erroneous findings of fact. In *Archer* v. *O'Brien* (7 Hun, 146, 150), the question arose on exceptions to the charge of the trial judge, and the court there held that the debtor's vendee was entitled to a charge that "If he was a *bona fide* creditor and took a bill of sale as security for his debt, and had no notice of any fraudulent design on the part of the vendor, he was entitled to hold the property as against the other creditors of his vendor." The proposition of law contained in this request was undoubtedly

correct, but it affords no countenance to the doctrine that the *bona fides* of the debt alone is conclusive upon the question of a fraudulent intent. Even the case of *Jewett* v. *Noteware* (30 Hun, 192) is sustainable upon the ground that fraudulent intent would not be predicated of the facts, the only fraud found, being the intent on the part of one creditor, to get payment of his debt in preference to another, knowing that the debtor did not possess property sufficient to pay both. The report of the case does not show that there was any finding of fact that the mortgage there was given to defraud creditors, and therein it differs radically from the case at bar. In the case of *Bedell* v. *Chase* (34 N. Y. 386), the plaintiffs had purchased of an insolvent firm their stock of goods, and paid for them by their own notes, maturing at different periods in the future. It was left to the jury upon an unexceptional charge, to say whether the transaction was fraudulent or not, and they found as a question of fact that it was an honest purchase, and this finding was sustained by the court on appeal.

We have thus briefly referred to the cases cited in the court below, and do not find in them authority for the proposition claimed. The authorities, aside from the statute itself, holding a contrary proposition, are quite numerous, and cannot, within reasonable limits, be either all referred to, or extensively quoted from.

Wait on Fraudulent Conveyances, § 208, says: "If the alienation is effected with a mutual design to hinder, delay or defraud creditors, the presence even of the most bounteous or adequate consideration will not save or cure it." "It is not sufficient that it be upon good consideration or *bona fides*, it must be both," citing many cases. (Kerr on Frauds, 199.) May on Fraudulent Conveyances, 233, says: "*Mala fides* supersedes all inquiry into the consideration, but *bona fides* alone is not always sufficient to support a transaction not founded on any valuable consideration." Senator EDWARDS, delivering the opinion of the Court of Errors in *Waterbury* v. *Sturtevant* (18 Wend. 354), said: "This, therefore, appears to be a case between a debtor and a *bona fide* creditor in which the former has preferred the latter to his other creditors, and

if simply a case of this description *unaffected with fraud*, the conveyance must be considered legal and valid." The case of *Blennerhassett* v. *Sherman* (105 U. S. 117), was where a mortgage was also given to secure a *bona fide* debt, and yet it was held by the court that, having been given for the purpose of facilitating the commission of a fraud by the mortgagor upon his other creditors, it was void. The frequent case of a mortgage of chattels for a *bona fide* debt where the mortgagor is permitted to remain in possession of the property, and dispose of it, is an illustration of the rule that a fraudulent purpose may be covered by a conveyance given to secure a *bona fide* debt. A conveyance to a creditor of property sufficient to pay his full debt, upon condition that he will give a portion to the grantor's wife, was held to be fraudulent in *Kissam* v. *Edmonston* (1 Iredell's Eq. 180). It was said by Judge EARL, in *Starin* v. *Kelly* (88 N. Y. 421), that " under the statute a creditor assailing a transfer of property as fraudulent may succeed by simply showing a fraudulent intent on the part of the vendor, or such intent on the part of the vendee. If, however, the vendee shows that he paid a valuable consideration for the property transferred to him, the proof of the fraudulent intent of the vendor only, is not sufficient ; then there must be proof also of a fraudulent intent on the part of the vendee, or that he had notice of the vendor's fraudulent intent." In *Syracuse Chilled Plow Co.* v. *Wing* (85 N. Y. 421, 426), this court, Judge RAPALLO writing the opinion, distinctly recognized the principle that a mortgage, though given for a just debt, might be assailed as fraudulent, and held that the question as to the intent with which it was given, was purely one of fact. (See, also, *Kimball* v. *Thompson*, 4 Cush. 441 ; *Gragg* v. *Martin*, 12 Allen, 498 ; *Bradley* v. *Ragsdale*, 64 Ala. 558, 559.) It was held in *Schmidt* v. *Opie* (33 N. J. Eq. 141) that if a mortgage be given for a fraudulent purpose, even though for an honest debt, and the mortgagee was cognizant of the mortgagor's purpose, it is fraudulent as against creditors. Similar authorities are found in *Garland* v. *Rives* (4 Randolph, 282), *Lowry* v. *Pinson* (2 Bailey's Law, 324), *Shelley* v. *Boothe* (73 Mo. 74).

From this review of the authorities it seems clear that, where there is an actual intent to defraud, no form in which the transaction is put can shield the property so transferred from the claims of creditors, even though a full and adequate consideration be received for the same.

The order of the General Term should, therefore, be reversed and the judgment entered on the report of the referee affirmed.

All concur.

Order reversed and judgment affirmed.