### JOHNSON v. PHILIPS et al., (two cases.)

(*Supreme Court, Special Term, New York County.* May 2, 1888.)

1. FRAUDULENT CONVEYANCES—CONSIDERATION—HUSBAND AND WIFE.

Certain transfers of property by a husband to his wife were alleged to have been made in payment of his indebtedness to her for money loaned. It did not appear how she could have procured the sums alleged to have been loaned, and there was a wide discrepancy between her statement and his as to the amounts and dates. He transferred his business to her, made damaging admissions as to his motives for so doing, tried to induce a third party to set up false claims to his property, was all the time embarrassed, and soon afterwards failed, leaving many debts unpaid, which he owed before the transfers. *Held*, that the transfers were made with intent to hinder, delay, and defraud creditors.[1]

2. SAME—FICTITIOUS INDEBTEDNESS.

A mortgage executed by an insolvent debtor, who is at the time pressed by his creditors, to secure an alleged indebtedness, the greater part of which was for mining stocks, which the mortgagor seemed to know were worthless, never inquiring as to their value, though not being acquainted with stocks, and not even knowing in what companies the stocks were, is fraudulent as to creditors.[2]

3. SAME—CONSIDERATION—VALID IN PART.

Such transfers and mortgage, though given partly for valid debts, as they include fictitious liabilities, are invalid *in toto*, and cannot stand as security for the actual indebtedness.

Action to set aside fraudulent conveyances.

Actions by Charles H. Johnson, receiver, to set aside a mortgage executed by Charles S. Philips to Eli Bennett, and certain transfers of property by said Philips to his wife, Julia E. Philips, as fraudulent and void as against judgment creditors.

*Whitehead & Suydam,* for plaintiff.   *G. D. Lamb,* for defendants.

ANDREWS, J.  I am of the opinion that the mortgage executed by the defendants Charles S. and Julia E. Philips to the defendant Eli Bennett, dated March 3, 1885, was fraudulent and void, as against the plaintiff and other judgment creditors of the defendant Charles S. Philips. Conceding that when that mortgage was executed Charles S. Philips may have been indebted to Bennett in some amount, it is very clear that over $6,000 of the alleged indebtedness, to secure which such mortgage was given, was entirely fictitious. The mining stock, which, it is claimed, was sold by Bennett to Philips, did not have, at the time of such alleged sale, nor for a long time prior thereto, any value whatever; and it is equally clear that both Philips and Bennett, at the time of such alleged sale, knew that the stock was worthless. In March, 1885, Philips was practically insolvent and pressed by his creditors; and, though he never before had dealt in stocks, made, as is claimed, the purchase in question. He admitted upon the trial that he made little or no inquiry as to the value of the stock, although he was mortgaging his real estate to secure payment therefor. He failed in business a month or two afterwards, transferred all his other property to his wife, but continued to hold the stock without endeavoring to ascertain its value or attempting to dispose of it; and, when examined in supplementary proceedings, did not know the names of the companies that issued the stock, or the character of the mines which such companies were supposed to own. He subsequently turned over the stock to the receiver, although there can be little doubt that, if he supposed such stock had

---

[1] As to when a conveyance to a wife will be upheld as against creditors of the husband, and when declared fraudulent and void, see Smith v. Seiberling, 35 Fed. Rep. 677, and note; Hedge v. Glenny, (Iowa,) 39 N. W. Rep. 818, and note; Lee v. Cole, (N. J.) 15 Atl. Rep. 531, and note.

[2] See, on the subject of fraudulent conveyances in general, and as to what is sufficient evidence of fraud to cause a conveyance to be set aside, Marshall v. Strange, (Ky.) 9 S. W. Rep. 250, and note; Glover v. Flowers, (N. C.) 7 S. E. Rep. 579, and note; Neal v. Foster, 36 Fed. Rep. 29, and note.

any value, he would have transferred it, as he did his other property, to his wife, to whom he claims to be still largely indebted. In the face of these facts, it must be a very credulous person indeed who can believe that Philips obtained the stock for any purpose except to create a fictitious indebtedness, and thus facilitate him in giving a mortgage upon his real estate for a large sum of money, and thereby enable him to defraud his creditors. I have no doubt from the testimony given by Philips and Bennett upon the trial, from the evasive answers given to questions as to the facts connected with this transaction, and from the demeanor of both witnesses when on the stand, that Bennett was perfectly well aware that the stock was worthless at the time of the alleged sale to Philips, and that he delivered the stock to Philips, and accepted the $8,000 mortgage, with full knowledge that Philips was obtaining the stock and executing the mortgage for the purpose of defrauding the creditors of the latter, and with the intent, on the part of Bennett, to assist Philips, as well as he could, in carrying out this design. Under these circumstances, even if the mortgage was given in part to secure a *bona fide* indebtedness of Philips to Bennett, it cannot be allowed to stand, even to the amount of such *bona fide* indebtedness; but must be treated as wholly fraudulent and void, as against the plaintiff and other judgment creditors, and must be set aside. *Russell* v. *Winne*, 37 N. Y 591; *Blennerhassett* v. *Sherman*, 105 U. S. 117; Wait, Fraud. Conv. §§ 194, 208.

I am also of the opinion that the various transfers by Philips to his wife were made by him, and received by her, with the intent on the part of both to defraud his creditors. It appears that Mrs. Philips did mortgage the house in Macon street, Brooklyn, which stood in her name, for $2,500, and loaned or gave the money received from such mortgage to her husband; but the evidence in regard to the other alleged indebtedness of Mr. Philips to his wife is very unsatisfactory. She had only $600 when they were married, and the sums which she could have received from carrying on the dressmaking business, after the marriage, must have been very small. It is claimed by her and her husband that the husband allowed her $50 a week for household expenses, and also that she received pay from various boarders; that, after paying all such expenses, she, in the course of time, saved up several thousands of dollars, which she loaned to her husband. This account of the way in which she became possessed of the money which, it is claimed, she loaned her husband, may possibly be true, but it is highly improbable. Moreover, Mr. Philips and his wife differ very widely in their testimony in regard to these alleged loans; there being a great discrepancy between the dates and amounts of the loans as stated by her, and the dates and amounts of the loans as stated by her husband. In view of the highly improbable account given as to the way in which the wife obtained the money with which to make such alleged loans; of the irreconcilable conflict between the testimony of the husband and that of the wife in regard to the dates and amounts of the loans; of the fact that Philips was insolvent, and pressed by his creditors, and finally failed, owing large sums of money; and of all the other circumstances under which it is claimed such loans were made; and of the appearance and demeanor of Mr. Philips upon the witness stand,—I am of the opinion that the evidence does not establish any *bona fide* indebtedness of Philips to his wife, exceeding the sum of $2,500. But the fraudulent character of the transfers of property, made by Philips to his wife, appears, not only by the apparently fictitious character of his alleged indebtedness to her, but also from other circumstances. He had been doing a large business in this and other cities. A half interest in the machinery, etc., at No. 188 Pearl street, had cost him $16,000 a few years before his failure. He was also the owner of a number of patents; and these, although having little market value at the time they were transferred to his wife, had previously had a large value, and, according to Philips's testimony, in certain contingencies which may happen, will have a large value

hereafter. Philips transferred these patents, and the machinery and other property at No. 188 Pearl street, to his wife; who, it is claimed, has since continued the tobacco business, under the name of "Philips Tobacco Company." It is not claimed that prior to such transfer she had ever had anything to do with the tobacco business, or knew anything about it. She says that after the transfer of the property to her she gave her husband a full power of attorney to act for her, and told him to carry on the business. It would seem that some effort was made to keep up the appearance of her having something to do with the business by having her go to the store occasionally, and by having the accounts kept in her name. It is very evident, however, that the transfer by Philips to his wife was a device to enable him to retain the patents, machinery, and other property at No. 188 Pearl street, and to continue the tobacco business in his wife's name, but really for his own benefit. There are other facts tending to establish the fraudulent nature of the transfers by Philips to his wife. Among these may be mentioned his purchase of 17 tons of salt, for which he had no immediate use, on credit; the efforts which he made to have Butterly set up a false claim that he had been carrying on the farm at Smithtown upon shares, and had an interest in the growing crops; the declarations made by Philips and his wife that they had fixed their affairs in such a manner that his creditors could not reach the property; also the fact that, during the period which covered the different transfers to the wife, Philips was pressed for money, became wholly insolvent, and finally failed in business, owing a large amount of debts, much of which existed prior to the transfers to his wife. Moreover, the evidence leaves no doubt in my mind that Mrs. Philips was fully aware of her husband's financial embarrassments, and that she accepted the various transfers made to her, with the intent, on her part, to aid her husband in defrauding his creditors. Under these circumstances, the various transfers made to her cannot be allowed to stand, even to the extent of the $2,500 which he appears to have owed her. The case of *Russell* v. *Winne*, and the other authorities above cited, hold that if a mortgage or other security is given to secure any indebtedness, a part of which is fictitious, the mortgage or other security is void, and will not be allowed to stand, even to the extent of the *bona fide* indebtedness. Even if Philips were indebted to his wife in the entire sum which it is claimed he owed her, I do not think the transfers of his property to her could be sustained. As above stated, it is very clear, from all the evidence in the case, that one of the principal objects to be attained by said transfers was to enable Philips to retain the patents and property at No. 188 Pearl street, and continue the business previously carried on there by him, nominally in his wife's name, but really for his own benefit. It has been settled by the decisions of the court of appeals that a transfer of this description, made by a debtor, is fraudulent as against his creditors, and will be set aside, even though such transfer be for a valuable and adequate consideration. *Billings* v. *Russell*, 101 N. Y. 226, 4 N. E. Rep. 531.

With regard to the question as to the sufficiency of the receiver's bond, which the counsel for Philips and his wife so elaborately argued upon the trial and in his brief, I am of the opinion that, while the question is not entirely free from doubt, the city court had jurisdiction to make the order allowing the amendment *nunc pro tunc* of the receiver's bond; and a sufficient bond, with two sureties, having been filed, pursuant to said order, the objection that the receiver cannot maintain these actions because he had not given proper bond before they were brought is not well founded.

There must be judgment for the plaintiff as prayed for in the complaint, with costs. Findings and judgments may be settled on two days' notice.