(22 App. Div. 417.)

### HOWE v. SOMMERS et al.

(Supreme Court, Appellate Division, Second Department.   November 30, 1897.)

1. FRAUDULENT CONVEYANCE—SUFFICIENCY OF EVIDENCE.

In an action by a creditor to set aside as fraudulent an assignment of a legacy by the debtor, the plaintiff is only required to establish the fraud by a fair preponderance of evidence.

2. SAME.

Plaintiff brought an action against defendant S. to recover for legal services in establishing his claim to a legacy of $6,000.   Defendant sought successive adjournments of the trial, on different excuses, and, when a verdict was rendered against him, secured a stay upon representations of his financial responsibility.   He then immediately assigned the legacy, his only property, in payment of an alleged indebtedness, to defendant B., a woman in whose house he had lived for many years.   B. soon assigned the legacy to her sister, to pay a debt of some $900.   On appeal from a judgment for plaintiff in an action to set side the assignment, *held*, that the judgment was warranted.

3. APPEAL—REVIEW.

In order that the appellate court may reverse a judgment entered on a decision at special term, it is not sufficient that it might have reached a different conclusion from the evidence, but it must be able to assert affirmatively, with reasonable certainty, that in its findings the trial court erred.

Goodrich, P. J., dissenting.

Appeal from special term.

Action by Charles G. Howe against Charles H. Sommers, Mary A. Berrian, and others.    From a judgment in favor of plaintiff, Charles H. Sommers and Mary A. Berrian appeal.    Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

John T. Canavan, for appellants.
James M. Hunt, for respondent.

CULLEN, J.　This is a judgment creditor's action, to set aside as fraudulent an assignment of a legacy.　I concur with the Presiding Justice that the debtor, though insolvent, had the right to prefer one creditor to other creditors; that fraud is to be proved, not presumed; and that, if the facts proved are as consistent with innocence as with guilt, the evidence is insufficient to establish the fraud.　At the same time, fraud can rarely be proved except by circumstantial evidence; and, though the issue be fraud, still in a civil action it is not necessary that the charge should be proved beyond a reasonable doubt.　It is sufficient that it is established by a fair preponderance of evidence.　Also, we cannot treat the case as though it were before us in the first instance.　To reverse the judgment, it is not sufficient that we might have reached a different conclusion from the evidence, but we must be able to assert affirmatively, with reasonable certainty, that in its findings the trial court erred.　The learned special term found that the transfer was made by the judgment debtor with intent to defraud his creditors, and that there was grave doubt as to the existence of the consideration. We think the evidence is sufficient to support these conclusions, and for myself I may say that, were the case before me for original disposition, I snould be inclined to reach the same conclusion.

The relation between the judgment debtor and his assignee was more than that of debtor and creditor.　It appears to have been that of a most intimate personal friendship.　On the trial of the action in the city court of Yonkers, brought by the plaintiff against the defendant Sommers, to recover his claim, the defendant Berrian appeared as a witness.　She must have been familiar with the applications for delays and for stays.　A postponement of the cause was requested on the ground of the defendant's illness, and an hour afterwards he appeared in court with the defendant Berrian.　The counsel stated to the court, at the time of the first application for the postponement, that the plaintiff would be able to collect his judgment from the defendant Sommers, and on this statement obtained an adjournment for a week, when the cause was tried, and a verdict rendered in favor of the plaintiff, the defendant asked for a stay, on the statement that he was fully able to respond to the claim and to give a bond.　On this same day, either at the time the statement was made or after the stay had geen granted on the faith of the statement, Sommers assigned the legacy in suit to Mrs. Berrian, stripping himself of all his property.　It was the plaintiff's services that led to the discovery of the very fund which was thus assigned to defeat his claim.　It is true that Sommers had the right to prefer Mrs. Berrian (if she was his creditor) to the plaintiff, no matter what his equities may have been; but, if his intention was to prefer his creditor by the payment of an honest debt, he does not seem to

have formed it until the very moment when he found he was no longer able to prevent the plaintiff from recovering his just claim. After the receipt of the assignment from Sommers, Mrs. Berrian seems, within a few weeks, to have assigned the legacy to her sister. The amount coming on the legacy was about $6,000. The alleged debt from Mrs. Berrian to her sister was about $900. There are other circumstances, unnecessary to recite, which further strengthen the conclusion that the object of Sommers was not to pay his debt, if there was one, but to put his property out of the reach of his creditor (the plaintiff), and that in this design the defendant Berrian participated. If there were a valid debt existing from Sommers to Mrs. Berrian, that fact would not support the transfer or assignment if it was made in bad faith, to hinder or delay Sommers' creditors; and in tnat purpose the defendant Berrian shared. Billings v. Russell, 101 N. Y. 226, 4 N. E. 531. I am also of opinion that the existence of the claim of Mrs. Berrian against Sommers was not satisfactorily established, and that the trial court would have been justified in holding it did not exist.

The judgment appealed from should be affirmed, with costs. All concur except GOODRICH, P. J., dissenting.

GOODRICH, P. J. (dissenting). Late in the afternoon, and after the closing of the county clerk's office, on September 21, 1896, the plaintiff obtained a verdict against the defendant Sommers, upon which judgment was entered at 9 o'clock on the following morning. On the last-named day, Sommers executed to Berrian a written assignment of his interest in the Brinckerhoff estate, above referred to, but the hour of its execution does not appear. The plaintiff attacks the validity of this assignment on the ground that it was the result of a conspiracy between the defendants Sommers and Berrian to cheat and defraud the creditors of Sommers. The court decided that the assignment was executed by the defendant Sommers with intent to hinder and delay his creditors, and for the purpose of placing the property referred to beyond their reach, and especially that of the plaintiff; and that the assignment was received and accepted by the defendant Berrian with full knowledge of such intent and purpose. For some years prior to June, 1889, Sommers had boarded with the defendant Berrian (then the wife of Theodore Berrian), and was indebted to her, on account of board and money advanced, in a considerable sum. He had given her his note for $9,000, and a bill of sale of certain personal property, as security for money advanced by and owed to her. Sommers had also assigned to her his interest in the estate of Mary E. Brinckerhoff, deceased, of Madison county. When that estate was settled, in proceedings before the surrogate of that county, a considerable sum of money was adjudged to be due to Sommers. The claim of Mrs. Berrian against him for board was adjusted at $2,500, and she received that sum from the proceeds of the estate, and, with Sommers, executed, on June 4, 1889, to the defendant Edward L. Stevens, individually, who was testamentary trustee of the estate of Mrs. Brinckerhoff, a transfer of all interest of the defendant Sommers in the estate.

The plaintiff, who is an attorney at law, alleges that in June, 1894, he ascertained that the defendant Sommers was entitled to upward of $6,000 additional moneys out of the Brinckerhoff estate, and that he was employed by him to recover the same; that his services were effectual, but that Sommers refused to pay him for his services the sum of $1,000, which he had agreed to pay.   For this reason, in July, 1896, the plaintiff brought an action against Sommers, in the city court of Yonkers, for that amount, and recovered the judgment already referred to.   The only grounds to support the allegation of conspiracy and fraud which appear in the record on appeal are connected with the trial of that action and the fact of the execution of the assignment to Mrs. Berrian on the day upon which the judgment was entered, and may be briefly summarized as follows:   On September 14, 1896, the action in the city court was called for trial.   Mr. Peake, counsel for Sommers, applied to put the case over the term, for the reason that an order had just previously been entered substituting him in place of the former attorney of the defendant, and that he was not sufficiently prepared to try the action.   Objection was made by the plaintiff to this postponement, on the ground that he would be prejudiced thereby, as proceedings were pending in the surrogate's court of Madison county to enforce the additional claim of the defendant Sommers in the Brinckerhoff estate; that such proceedings might be closed before another term of the court; and that the plaintiff would be unable to collect the amount of the judgment if he should obtain one.   The trial was adjourned until the 21st of September, on which day Mr. Peake again applied for an adjournment, presenting a physician's certificate that Sommers was sick and unable to attend court.   The plaintiff's counsel repeated his statement made on the previous occasion, and the court refused to adjourn the trial, but granted a recess of an hour, at the end of which time Sommers appeared, and was examined as a witness for the defense, as was also the defendant Berrian.   There is evidence that Sommers arose from a bed of sickness, and came to the court.   After the rendition of the verdict, Mr. Peake asked for a stay of execution; but plaintiff's counsel urged that the granting of the stay would imperil the plaintiff's claim; that, as the clerk's office was closed for the day, he could not enter judgment until the following morning; and that an undertaking on appeal could be prepared previously to that time.   Mr. Peake replied that Sommers was financially good, and that he intended to give a sufficient undertaking on appeal.   The court granted a five-days stay after the entry of the judgment, and the judgment was entered the next morning, promptly at 9 o'clock.   Some time during that day, before Mr. Peake, as notary public, Sommers executed a written assignment to Mrs. Berrian of all his interest in the Brinckerhoff estate; the defendant Mrs. Berrian at the same time executing another paper, by which, in consideration of the assignment, she agreed to pay the bill for medical services which Dr. Spreng had against Sommers.   There is also a statement that Mrs. Berrian had assigned the claim to her sister, but when or for what consideration does not appear.   This constituted all the evidence of conspiracy

or fraud. Thus, it will be seen that the only grounds upon which the plaintiff bases his allegation of conspiracy and fraud are the attempt of the defendant Sommers to postpone the trial of the action, the execution of the assignment on the same day upon which the judgment was entered, and an assignment by Berrian to her sister, coupled with the fact that the defendants Sommers and Berrian, being examined as witnesses in the action, and present in court when the judgment was rendered, knew of the granting of the stay of execution.

In this case two principles are elementary: First, fraud is to be proved, and not presumed; second, a debtor, even though insolvent, has the right to transfer his entire estate to one creditor to secure his claim, in preference to all other creditors.

As to the first proposition, the law is well stated by Judge Finch in the case of Shultz v. Hoagland, 85 N. Y. 464, where he says:

"The case furnishes no exception to the rule that fraud is to be proved, and not presumed. Grover v. Wakeman, 11 Wend. 188. It is seldom, however, that it can be directly proved, and usually is a deduction from other facts which naturally and logically indicate its existence. Such facts, nevertheless, must be of a character to warrant the inference. It is not enough that they are ambiguous, and just as consistent with innocence as with guilt. That would substitute suspicion as the equivalent of proof. They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting."

It is not possible to say that all the facts connected with the present transfer are not entirely consistent with an honest claim of Mrs. Berrian against Sommers, and an intention of Sommers to pay her what was due, instead of permitting the same to be paid to the plaintiff, whose claim he was contesting.

This brings us to a consideration of the evidence of the defendant Berrian as to the foundation of her claim against Sommers. She was formerly the wife of Theodore Berrian. She says that just before his death she commenced to keep boarders, and that Sommers boarded with her some 14 or 15 years. For such portion of this time as preceded the 4th of June, 1889, she had received notes, a mortgage on personal property, and an assignment of the Brinckerhoff claim; but, when this claim was settled, she adjusted her bill for board in the manner already stated, receiving $2,500 in settlement, and releasing her claim to the estate. The date of Mr. Berrian's death does not appear, but about the year 1890 she married Mr. Lyddy. Sommers continued to board with her until the trial of the action, and during that time, namely, from June 4, 1889, to September 26, 1896, Sommers' board, at the rate of $10 per week, amounted to $3,800. He was a very sick man in the spring of 1896, and a large bill for medical services of Dr. Spreng was incurred. She paid $150 for nursing and attendance, $800 to Dr. Spreng, a drug bill of $180.25, and claimed $32 for board of a friend of Mr. Sommers and of the plaintiff, and other items; so that, as she testifies, on the day of the assignment Sommers was indebted to her in the sum of $5,769. The amount paid to her or her attorney under the surrogate's decree was $6,289, out of which, by the terms of the decree, $770 was directed to be paid to Mr. Fish, her attorney

of record, leaving $5,500, which she paid over to her sister to whom she had made an assignment. Thus it appears by her uncontradicted testimony that the amount which she and her sister received under the assignment of the Brinckerhoff interest was insufficient to pay her bill against Sommers.

The learned trial justice summarized the grounds of his conclusion, that the assignment of Sommers to Berrian was fraudulent, substantially as follows: Until the plaintiff ascertained that a further sum was due Sommers from the Brinckerhoff estate, Sommers and Berrian were unaware of the fact; that Mr. Peake, Sommers' attorney, in the presence of Sommers and Berrian, deceived the city court by representations which induced, first, a postponement of the trial, and, second, after verdict, the granting of a stay of execution for five days after entry of judgment; and that while such stay was in operation, and the plaintiff thereby forbidden from proceeding upon the judgment, the assignment was executed by the defendant Sommers, and received by the defendant Berrian, with full knowledge of all such facts; and that by the decree of the surrogate the assignment was recognized as effectual in transferring Sommers' interest to Berrian,—and concluded as follows:

"That these facts are sufficient to establish guilty participation on the part of the defendant Berrian in the scheme of Charles H. Sommers to hinder, delay, and defraud his creditors, including plaintiff in and by the assignment, a copy of which is marked 'Exhibit A,' attached to the complaint, which was executed during the time that plaintiff was under the stay which had been granted by the court under the misrepresentations made to the court by the attorney for the defendant Sommers in the presence and with the knowledge of the defendant Berrian; and, furthermore, that the conditions concerning the defendants Berrian and Sommers, and their relations to the estate of Brinckerhoff, and the previous transactions between the defendants Sommers and Berrian in relation to such estate, and the assignment executed by the defendant Berrian to her sister-in-law, and the character of her testimony upon the stand, are sufficient to throw grave doubt about her claim that there was a sufficient consideration for the assignment (Exhibit A, attached to the complaint)."

I cannot agree with these conclusions of the learned trial justice. It is entirely consistent with an honest desire on the part of Sommers that, having substituted a new attorney, he should wish a postponement of the trial, in order to enable him to prepare for trial. Nor was a stay of proceedings necessary or requisite to enable the defendant Berrian to execute the assignment in question. If there had been no stay, and an execution had been issued immediately upon the entry of judgment, the interest which Sommers had in the Brinckerhoff estate could not have been levied upon by the sheriff, and the assignment could have been legally executed.

It appears that the decree of the surrogate of Madison county was entered on October 5th, and on that day an injunction order was entered in this action, to which Stevens, the trustee, is a party, ordering him to reserve out of the amount due Sommers the sum of $1,500, to await the result of this action; but there is no proof that such order was ever served on any of the parties, nor does the date of the payment to Sommers or Berrian appear. Nor does it appear to what county the execution was issued, and we certainly cannot assume that it was issued to Madison county, where the Brincker-

hoff estate was situated, nor that any attempt was made under any execution to effectuate a levy or lien upon the money in the hands of Stevens. The fact that the assignment was executed upon the day of the judgment ought not to be taken into consideration as a suspicious circumstance in deciding upon the fairness of the transfer, providing Sommers was actually indebted to Berrian in an amount greater than the amount of the interest transferred. See Born v. Shaw, 29 Pa. St. 288, 292. It will be observed that the learned trial justice does not find the invalidity of this claim, nor the want of consideration for the execution of the assignment. He only says that he had grave doubt upon the subject. This grave doubt was not sufficient to bring his mind to the conclusion that the claim did not exist. If he had so determined, we should have been disinclined to disturb a finding which in a large degree might have resulted from the demeanor and appearance of the witnesses on the stand. But he made no such finding. Indeed, upon the uncontradicted testimony in the case, it is exceedingly difficult to believe that he did not go quite as far in his statement as he ought to have gone. In legal proceedings, suspicions cannot take the place of proof, nor imagination of what may be the place of what is established by the testimony. There is no finding in this case that the claim of Berrian against Sommers is fictitious. It is not disputed that Sommers had boarded with her for many years, and that for a period of seven years prior to the assignment he had paid her nothing on account of his board, nursing, and expenses of medical attendance and drugs. A similar running up of a large bill for board, and a similar delay in its payment, occurred prior to 1889, when the claim was paid out of the first moneys received from the Brinckerhoff estate. The contracting of the later bill and the delay in its collection were but a repetition of the first incident.

There is a vague suggestion in the brief of plaintiff's counsel, not rising to the dignity of a positive allegation, that there were meretricious relations between Sommers and Berrian. This suggestion is utterly unfounded and unjustifiable. It is undisputed that Mrs. Berrian was keeping boarders, and that Sommers boarded with her during the lifetime of both husbands, and during her widowhood; and there is no reason why her claim for reasonable compensation should not be allowed. If the learned justice could not take the responsibility of deciding affirmatively that the claim was fictitious, we cannot ripen his doubts into conviction, and find that there was no consideration for the assignment.

It appears by the decree of the surrogate that the share of defendant Sommers in the Brinckerhoff estate was $6,289.90, out of which he directed the payment of $770.21 to Mr. Fish as counsel, leaving a balance of $5,519.69, which was paid to the attorneys of Mrs. Berrian. They deducted from that sum $798, leaving the balance payable to Mrs. Berrian $4,721.69. There is some ambiguity in the evidence as to what sum was paid to the sister of Mrs. Berrian under the assignment, and what was paid to herself; but the whole amount received under the decree by either or both was insufficient to pay the amount of Mrs. Berrian's bill against Sommers.

We conclude, therefore, that there is no proof that the assignment was without consideration; that Sommers had the right to transfer his interest in the Brinckerhoff estate to Mrs. Berrian to pay her claim; that the evidence does not establish an intention or conspiracy to cheat and defraud the plaintiff; and that the judgment should be reversed.