### WINSLOW v. STAAB et al.

(District Court, S. D. New York. March, 1916.)

1. BANKRUPTCY ⬅175—FRAUDULENT CONVEYANCES—WHAT CONSTITUTES.

A conveyance by a bankrupt to his daughter *held* one in fraud of creditors, which might be set aside.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. ⬅175.]

2. TRIAL ⬅396(4)—EVIDENCE—FAILURE TO INTRODUCE.

Where defendant rested on the evidence introduced by plaintiff, she cannot complain that the court found the facts against her in accordance with plaintiff's evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 935; Dec. Dig. ⬅396(4).]

3. BANKRUPTCY ⬅303(1)—FRAUDULENT CONVEYANCES—BURDEN OF PROOF.

A defendant, asserting the validity of a conveyance by one in falling circumstances, who thereafter became a bankrupt, has the burden of proving it was not in fraud of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458, 459; Dec. Dig. ⬅303(1).]

4. BANKRUPTCY ⬅279—COURTS OF BANKRUPTCY—JURISDICTION.

Under Bankr. Act July 1, 1898, c. 541, § 23b, 30 Stat. 552, as amended by Act Feb. 5, 1903, c. 487, § 8, 32 Stat. 798, and Act June 25, 1910, c. 412, § 7, 36 Stat. 840 (Comp. St. 1913, § 9607), declaring that suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt whose estate is being administered, might have brought or prosecuted them, except suits for the recovery of property under section 70, subd. "e" (section 9654), providing for the avoidance of preferential and fraudulent transfers, the trustee in bankruptcy may sue in the bankruptcy court to set aside a conveyance in fraud of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419-424; Dec. Dig. ⬅279.]

In Bankruptcy. Action by Francis A. Winslow, trustee in bankruptcy, against Frederick H. Staab and others, to set aside a fraudulent conveyance. Decree for plaintiff.

Maurice P. Davidson, of New York City, for plaintiff.
Milo J. White, of Mt. Vernon, N. Y., for defendants.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

233 F.—20

THOMAS, District Judge. This is an action brought by the trustee in bankruptcy of the estate of Frederick H. Staab to set aside a conveyance of real estate under the provisions of section 70, subdivision "e," of the Bankruptcy Act. On June 24, 1913, Frederick H. Staab was adjudicated a bankrupt. About 11 months prior thereto and while considerably indebted, he conveyed, by proper deed, the property described in the complaint to his daughter, Effie O. Staab, who then was, and ever since has been, a member of his household. The property thus conveyed was known as the store property, and was the place where the defendant conducted his business.

The complaint alleges that the transfer was without consideration, and was made for the purpose of hindering, delaying, and defrauding creditors.

[1, 2] The facts disclosed by the evidence show that at the time of the transfer the bankrupt, the owner and proprietor of the property and the business, was engaged in conducting a small retail liquor business at Mt. Vernon, N. Y., which he had been carrying on for a period of about 20 years. He was then owing his creditors upwards of $4,000, and was finding it difficult to meet his bills in due course, and one firm of creditors at least were then, and had been for some time, pressing him for payment of their claim, which was quite a large one, although it had been materially reduced from its original amount. This firm had previously compelled the bankrupt to execute a written acknowledgment of his indebtedness to them, and had also required the bankrupt's wife to personally execute a written guaranty for its payment. It was stipulated at trial that the value of the property conveyed was $9,500, and that it then was subject to a mortgage of $5,000 in favor of the Yonkers Savings Bank. The bankrupt's business was not in a prosperous condition, and aside from the transferred property his only assets consisted of the stock in trade, book accounts, and fixtures, which did not exceed $3,600 in value according to his own estimate, which seems to me very much larger than their actual value. In addition to this he claimed to own some legacy which, though valued by him at $1,500, was entirely uncertain and contingent, and nothing which could be considered a tangible asset. No attempt was ever made by him to raise any money on it with which to satisfy the insistent demands of creditors, whose accounts had been long overdue and running for a long period of time and in a very unsatisfactory condition.

The only consideration bankrupt received from his daughter at the time the deed was executed was $80, which amount was, as he testified, "all she then had in the house." For some reason—yet unexplained—notice of the fact that the bankrupt had transferred this property was never published in the local publication of real estate conveyances, mortgages, etc., to which the public were then accustomed to look for such notices, and because of this fact and the fact that the bankrupt directed the attention of creditors, from time to time after the transfer was made, to the value of the equity in his property as amply sufficient to meet all demands, the creditors were misled as to his actual financial condition or worth until within a few days of bankrupt's adjudication. They had been led to believe that the bankrupt

was the owner of this property, as well as another piece of property, known as the home property, which has been the subject of another suit of a similar character, which suit was decided by this court adversely to the trustee at the conclusion of the trial. Subsequent to these two transfers, the first made about 15 months, and second, as stated, about 11 months prior to adjudication, creditors called several times to collect their accounts and to insist that something must be done to reduce the indebtedness, and one account of something like $800 was in the hands of a local attorney for collection, who was threatening legal proceedings, which were avoided by the promise of the bankrupt to pay $50 a month on the account, which promise was kept only intermittently. During this period of time, in discussing the accounts with cerditors, the bankrupt mentioned a possible sale of either one or both properties so as to enable him to pay up his indebtedness, and in this way his creditors were further misled and deceived as to the title ownership of his real estate.

In his bankruptcy schedules he listed his assets (inclusive of exempt property) as of the value of $2,048.28 and his liabilities as of the amount of $5,942.34, but it appears that the assets have so shrunk that the amount now available for dividends in the hands of the trustee is but $684.84. While the bankrupt and his daughter, in their answers to the complaint, specifically denied the allegations as to the transfer being without consideration, and made for the purpose of hindering, delaying and defrauding creditors, they affirmatively pleaded that the transfer was for a valuable consideration and made without intent to hinder, delay, or defraud creditors of the bankrupt. Nevertheless they declined the opportunity at the hearing to introduce any evidence to sustain these affirmative allegations and rested their case on plaintiff's evidence.

The facts brought out at the trial as to the financial condition of bankrupt at the time of the transfer—the inadequacy of the consideration passing from the grantee to him, the situation of the parties as part of one household, the subsequent statements made by the bankrupt as to why the transfer had been made, the failure of the real estate record to publish notice of this transfer, the consequent ignorance of creditors as to the transfer having been made, and the failing condition of bankrupt's business as subsequent events disclosed—all tend to the conviction that the transaction was not a bona fide one, but, on the contrary, was intended to prevent the equity in the property from being used by creditors to satisfy their claims. And in view of an entire absence of evidence tending to explain away the facts peculiar to the transaction, the conclusion becomes absolute that the conveyance was in fact without consideration and made in bad faith. True, it may be, as intimated, that the daughter had previously advanced moneys to the bankrupt in aid of his business, which, when taken in connection with the $80 claimed by her father to have been paid him at the time the deed of conveyance was executed, would have been sufficient to show that an adequate consideration had in fact been paid for the equity in the property, but such facts should have been shown by evidence at the hearing, and as the principal defendant saw fit to rest

upon the prima facie case presented by the plaintiff, she cannot now be heard to complain if the issues are here decided against her. From all the evidence I am satisfied that the bankrupt at the time of the transfer was fearful that he would eventually become a bankrupt, and that he and the members of his family had long before realized that, because of the falling off of his business, as time wore on he would find it more and more difficult to meet his bills in the regular way; that he and his wife considered the methods pursued by some of his creditors as harassing, and in consequence were angered, and finally resolved upon making the transfer of this property to their daughter for the purpose of preventing creditors depriving the bankrupt of the benefits to be derived from the ownership of the equity in this real estate; and that the transfer had the effect of making the bankrupt insolvent beyond any question.

[3] When the daughter filed her affirmative defense, she assumed a burden which she failed to sustain by any evidence whatsoever. This, together with the evidence adduced at the trial, makes it necessary for me to find that the conveyance was in fact fraudulently made without adequate consideration and should be set aside as prayed for by the plaintiff in his bill of complaint. First Nat. Bank v. Miller, 163 N. Y. 164, 57 N. E. 308; Klinger v. Hyman et al. (C. C. A. 2d Cir.) 34 Am. Bankr. Rep. 338, 223 Fed. 257, 138 C. C. A. 499; Starin v. Kelly, 88 N. Y. 421; Read v. Williams, 125 N. Y. 560, 26 N. E. 730, 21 Am. St. Rep. 748; Billings v. Russell, 101 N. Y. 226, 4 N. E. 531; Bentley v. Young (D. C. N. Y.) 31 Am. Bankr. Rep. 506, 210 Fed. 202.

[4] Upon return of this case to court, counsel representing the bankrupt and his daughter entered a general appearance. Yet when the case was about reached for hearing they sought to only appear specially for the purpose of pleading to the jurisdiction of the court, and when the case was later called for trial moved for its dismissal on the ground that the court lacked jurisdiction because all of the parties thereto were residents of the state of New York and defendants had not given their consent. The motion was denied and the case proceeded to trial. In the brief presented counsel again make the claim that the court is without jurisdiction, and quote from Collier on Bankruptcy (10th Ed.) in support of their contention. A reference to the same authority (page 475) will disclose that the author, when commenting on the purpose of the amendments of February 5, 1903, and June 25, 1910, to the Bankruptcy Act of 1898 (section 23b), says:

"The direct result of the case of Bardes v. Bank [178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175] was * * * to deprive the District Court of jurisdiction of a suit brought by the trustee for the recovery of property in the hands of an adverse claimant. It had an appreciable effect upon analogous provisional and summary remedies. The amendment of 1903 added to section 70e a clause conferring upon the court of bankruptcy jurisdiction of a suit to recover property which has been transferred in fraud of creditors, and which any creditor might have avoided. Amendments, restoring concurrent jurisdiction, at least as to suits to recover property, became imperatively necessary and were very generally demanded. This demand was met by the changes made in this subsection and in sections 60b, 67e and 70e by the act of 1903. But the amendatory act failed to include in clause "b" of this section suits

for the recovery of property under section 70e. This was evidently a defect. It at once raised a doubt whether a suit to recover property transferred more than four months before the bankruptcy could be instituted other than in a state court. The failure to include suits for the recovery of property under section 70e was obviously an inadvertence. It was at least recognized as such by Congress in enacting the amendment of 1910, which included a reference to suits brought under section 70e, and, as the law now stands, suits for the recovery of property transferred in fraud of creditors prior to the four months' period may be brought in District Courts."

In Loveland on Bankruptcy (4th Ed., 1912), at page 1043, will be found this statement:

"The trustee may bring a suit to recover property transferred in fraud of creditors or as a preference in a court of bankruptcy, or a state court, having jurisdiction of the parties and subject matter. In respect to this class of suits the courts of bankruptcy and the state courts now have concurrent jurisdiction * * * without the defendant's consent."

The same view expressed as to the amendment of June 25, 1910, conferring jurisdiction on District Courts to hear and determine causes when it appears that a trustee in bankruptcy is seeking to recover for the estate property claimed to have been conveyed away by the bankrupt in fraud of his creditors, prior to the four months' period next preceding the commencement of bankruptcy proceedings, seems to have been adopted by Judge Elliott in Newcomb v. Biwer (D. C. S. Dak.) 29 Am. Bankr. Rep. 15, 199 Fed. 529, decided October 15, 1912, and by Judge Lacombe, of the Circuit Court of Appeals for the Second Circuit, in Milkman v. Arthe, decided April 13, 1915, and reported in 34 Am. Bankr. Rep. 536, 223 Fed. 506, 139 C. C. A. 55. The motion to dismiss is therefore overruled.

This will make unnecessary any discussion as to whether the appearance entered by counsel for defendants was special or general.

Decree accordingly.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes