JOSEPH GREENWALD et al., Respondents, *v.* AUGUSTUS WALES, as Sheriff of Broome County, Appellant.

PERSONAL PROPERTY LAW, §§ 24, 29 — PURCHASER'S KNOWLEDGE OF FRAUDULENT INTENT OF VENDOR — WHEN NOTICE THEREOF A QUESTION OF FACT. Under section 29 of the Personal Property Law (L. 1897, ch. 417) the title to property transferred to a purchaser for a valuable consideration with the intent to defraud creditors (§ 24) is not affected or impaired unless it shall appear that such purchaser had previous notice of the fraudulent intent of his vendor; but if the purchaser has knowledge that the effect of the sale is to deprive the vendor's creditors of the means of collecting their debts, it is a question of fact whether such knowledge does not give him notice of the fraudulent intent of the vendor.

*Greenwald* v. *Wales*, 67 App. Div. 628, reversed.

(Argued February 27, 1903; decided March 17, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 22, 1902, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*H. D. Hinman* for appellant. To the request of the plaintiff to charge "The fact that the plaintiffs knew that by the sale of the goods Hapgood's creditors would be deprived of the means of collecting their debts, is no evidence of fraud and does not affect either title or ownership of the property," the court erroneously instructed the jury, "that, gentlemen, is so; all the law requires is that the plaintiffs should not be a party to the intended fraud on the part of Hapgood; I so charge you." (*Coursey* v. *Morton*, 132 N. Y. 556; *V. N. Bank* v. *Newton*, 25 App. Div. 62.)

*Jesse S. Epstein* and *Mark H. Ellison* for respondents. The court's charge as a whole having conveyed to the jury the correct rule of law, appellant's exceptions taken to isolated portions thereof cannot be upheld. (*Caldwell* v. *N. J. S. Co.*, 47 N. Y. 282; *People* v. *McCallan*, 103 N. Y. 587; *Sperry* v. *Miller*, 16 N. Y. 407; *McGinly* v. *U. S. L. Ins. Co.*, 77 N. Y. 497; *Losee* v. *Buchanan*, 51 N. Y. 492; *Hickenbottam* v. *D., L. & W. R. R. Co.*, 122 N. Y. 100; *Brozek* v. *S. Ry. Co.*, 161 N. Y. 64.) The charge, "The fact that the plaintiffs knew that by the sale of the goods Hapgood's creditors would be deprived of the means of collecting their debts is no evidence of fraud, and does not affect their title or ownership of the property; all the law requires is that the plaintiffs should not be a party to the intended fraud on the part of Hapgood," was proper. (*Ruhl* v. *Phillips*, 48 N. Y. 125; *Shidlovsky* v. *Gorman*, 51 App. Div. 253; *Dodge* v. *McKechnie*, 156 N. Y. 514; *Zoeller* v. *Riley*, 100 N. Y. 102.)

CULLEN, J. The action is in replevin to recover a stock of goods seized by the appellant as sheriff of Broome county on an attachment issued against the property of Chester M. Hapgood, the respondents' vendor. It appears by the evidence that the plaintiffs, under the name of the Manhattan Purchas-

ing Syndicate, were in the business of purchasing stocks of goods in various parts of the country, shipping them to New York and there selling them at auction. Their vendor in the present case, Hapgood, was at the time of the sale carrying on a retail store for the sale of ladies' and gentlemen's furnishing goods in the city of Binghamton, in this state. The respondents' attention was called to the desire of Hapgood to sell out his stock through a broker in that business. One of their number, Greenwald, went to Binghamton on Saturday, December 15th, 1899, and examined the stock in the store in which Hapgood was then doing business. Greenwald testified that it would cost about six thousand dollars to replace the goods then in stock at wholesale prices, but that for the purpose of an auction sale they were worth much less than that sum. After some bargaining the plaintiffs agreed to buy the stock for $2,700 and paid Hapgood $500 on account. On the Tuesday following Greenwald returned to Binghamton and under his direction the goods were placed in packing boxes and taken to the Erie railroad station for shipment to New York city. While there they were seized by the sheriff under the attachment heretofore mentioned. When Greenwald returned to Binghamton he brought a certified check for $2,200, the remainder of the purchase money. Much discussion occurred between the parties as to the payment of this sum. Greenwald insisted that he should not be required to make the payment until the goods had been packed up and delivered at the railroad station. To this Hapgood refused to accede. A witness present on the occasion testified that in this negotiation Greenwald threatened that he could close the store by notifying Claflin & Company, Calhoun & Robbins and other New York merchants of Hapgood's intended sale. Greenwald did not deny this conversation. The most he would say was that he did not recollect whether he said or did not say the words imputed to him. He concedes that he urged that the final payment should not be made until the goods had been packed up and delivered at the station. Hapgood, however, maintained his position and the check was delivered to

him. He collected it from the bank and absconded. At the time he was indebted to the New York merchants mentioned and others in a sum in excess of $3,000. The character and details of this transaction tended to cast very grave doubts on the good faith of the plaintiffs. The issue, however, was one of fact for the jury, and the only question before us is the correctness of the court's instructions to the jury.

It would not be profitable to review in detail the charge of the learned trial judge. Each party presented a great number of requests. Several of those presented by the plaintiffs and charged by the court stated the law too favorably to them. The charge of the trial judge in a case of this character should, however, be viewed as a whole, and it may be that in most of the instances referred to the errors, if such they were, were cured by subsequent instructions to the jury, made either of the court's own volition or in answer to request by the defendant. But there was at least one instruction to the jury which was vital in its character, going to the kernel of the case, which does not seem to have been limited or modified in any other part of the charge. To the request of the plaintiffs to charge that "The fact that the plaintiffs knew that by the sale of the goods Hapgood's creditors would be deprived of the means of collecting their debts is no evidence of fraud, and does not affect either title or ownership of the property," the court charged : " That, gentlemen, is so ; all the law requires is that the plaintiffs should not be a party to an intended fraud on the part of Hapgood ; I so charge you." We think this instruction clearly erroneous. The request involves the assumption that the plaintiffs might know not only that by the sale the goods sold would not longer be subject to seizure by the creditors, which, of course, would be the effect of any sale, but that thereby the creditors would be deprived from collecting their claims either by resort to the consideration paid for the sale or otherwise. It seems, therefore, to be in effect that though the plaintiffs might know that their vendor was by the sale about to place all his property beyond the reach of his creditors, still as long as the

plaintiffs' object was only to secure a good bargain for themselves they could make the purchase with impunity. This is made more apparent by another portion of the charge, where the court said, " That the plaintiffs had a right to purchase those goods and to take them and receive them if they took them in good faith, and without any intent on their part to cheat or defraud the creditors of Hapgood." This is not the law. By section 24, Personal Property Law (Laws of 1897, chap. 417), every assignment or transfer of goods or things in action, with intent to hinder, delay or defraud creditors, is void as to such creditors. By section 29 it is enacted that the provision cited shall not affect or impair the title of a purchaser for a valuable consideration unless it shall appear that such purchaser had previous notice of the fraudulent intention of his grantor. To bring himself within the saving clause of the statute it is necessary that the purchaser should have no notice of his vendor's fraudulent purpose. If he has such knowledge it will not protect his title that he was not interested in the fraudulent purpose of his grantor, but sought solely in his own interest a profitable purchase. " The fact of the payment of a valuable consideration upon a transfer of property is not, as a proposition of law, inconsistent with the existence of an intent to defraud." (*Billings* v. *Russell*, 101 N. Y. 226.) In *Starin* v. *Kelly* (88 N. Y. 421) it is said by Judge EARL : " Under the statute a creditor assailing a transfer of property as fraudulent may succeed by simply showing a fraudulent intent on the part of the vendor, or such intent on the part of the vendee. If, however, the vendee shows that he paid a valuable consideration for the property transferred to him, then proof of the fraudulent intent of the vendor only is not sufficient; then there must be proof, also, of a fraudulent intent on the part of the vendee, or that he had notice of the vendor's fraudulent intent." It was, therefore, sufficient to render the sale void as to the defendant who represented an attaching creditor, that the plaintiffs had notice or knowledge of their vendor's fraudulent intent, even though they may not have participated therein.

If it be assumed, however, that the construction I have given to the charge of the learned judge is too broad, though I think it is one that may have been readily entertained by the jury, knowledge by the plaintiffs that the effect of the sale was to deprive Hapgood's creditors of the means of collecting their debts was certainly evidence of fraud on the plaintiffs' part if it did not constitute fraud itself. While fraud is not to be presumed, but must be proved, it is rarely susceptible of direct proof and may be inferred from facts and circumstances which warrant the conclusion. "There can be no doubt that it is legitimate for the jury in such cases to consider whether the vendee had knowledge of facts pointing to a fraudulent intent or calculated to awaken suspicion, and that actual notice of a fraudulent intent on the part of the vendor need not be established by direct proof. The fact of notice of knowledge may be inferred from circumstances." (*Parker* v. *Connor*, 93 N. Y. 124.) The presumption is that a man intends the natural consequences of his act. If the effect of the sale by the plaintiffs' vendor was to deprive his creditors of the means of collecting their debts it might be presumed in the absence of other motive or inducement that his intention was to accomplish that object, and if the plaintiffs had knowledge that this was to be the result it was for the jury to say whether such knowledge did not give them notice that Hapgood's intent was fraudulent.

There are other portions of the charge which are subject to criticism, but as the judgment must be reversed for the error pointed out, it is unnecessary to discuss them.

The judgment should be reversed and new trial granted, costs to abide the event.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN, VANN and WERNER, JJ., concur.

Judgment reversed, etc.