## GROSS v. GROSSMAN.

(Circuit Court of Appeals, Fifth Circuit. November 25, 1924.)

No. 4317.

1. **Bankruptcy ⬅303(3)—Evidence held to show bankrupt's stock of merchandise was transferred with intent to defraud creditors.**

Evidence *held* to show that bankrupt was true owner of stock of merchandise transferred to defendant, and that transfer was intended to defraud creditors.

2. **Bankruptcy ⬅185 — Trustee entitled to avoid sale in violation of state Bulk Sales Law, four months limitation not being applicable.**

Under Bankruptcy Act, § 70e (Comp. St. § 9654), authorizing bankruptcy trustee to avoid any transfer by bankrupt, which creditors might have avoided, transfer of stock of merchandise, in violation of Rev. St. Tex. art. 3971 (Vernon's Ann. Civ. St. Supp. Tex. 1918, art. 3971), regulating bulk sales, might be set aside in suit by trustee, and four months limitation of section 67e (Comp. St. § 9651) did not apply.

Appeal from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Suit in equity by S. L. Gross, trustee, against Morris Grossman. Decree for defendant, and plaintiff appeals. Reversed.

J. H. Synnott and J. C. Muse, both of Dallas, Tex. (Muse & Muse, of Dallas, Tex., on the brief), for appellant.

J. S. Patrick and R. E. Eubank, both of Paris, Tex., for appellee.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

BRYAN, Circuit Judge. This is a suit in equity by the appellant, trustee in bankruptcy, to recover for the estate of Max Minzer, the bankrupt, a stock of goods of which the appellee, Morris Grossman, claims to be the owner.

[1] The stock of goods in question is located at Paris, Tex., and was originally owned by Minzer, the bankrupt, who in September, 1922, opened up a dry goods store at that place, with a stock of goods worth about $3,000, shipped from his store at Dallas. No entry was made on the books of the Dallas store showing withdrawal of the goods. In July, 1922, Morris Grossman, appellee, was adjudicated a bankrupt, and on January 18, 1923, was granted his discharge by the bankruptcy court. He was in charge of the Paris store at a salary of $25 or $30 per week, from the time it was established until January 2, 1923, when he received a bill of sale of the stock of goods therein from Minzer for a recited consideration of $5,237.16. No information as to creditors was requested or given. The bill of sale was recorded in March, 1923. Both before and after it was executed, the store at Paris was conducted under the name of the Paris Bargain House, and Minzer continued to make shipments of goods to it from his Dallas store under that name, without keeping a record of such shipments, until May, 1923, when he was adjudicated a bankrupt, whether upon a voluntary or involuntary petition does not appear.

During the period intervening the date of the bill of sale and the date of Minzer's bankruptcy, Minzer's books kept at his Dallas store failed to show the disposition of goods of the value of about $9,000, but Minzer and Grossman both testified that all goods shipped to the Paris store after January 1, 1923, were paid for in cash. Minzer testified before the referee in bankruptcy that Morris Grossman did not pay or agree to pay anything for the stock of goods at Paris, but that the bill of sale was executed in satisfaction of a debt of $3,200, which he owed to appellee's brother, Henry Grossman, who was engaged in the real estate business and lived in New York. Upon filing the bill, the trustee made application to the District Court to appoint a receiver for the Paris store, and upon a hearing of that application, Morris Grossman testified that he agreed to pay $1,000 in addition to the consideration stated by Minzer. A receiver was appointed. At the final hearing, Minzer's testimony before the referee was before the court, as was also the deposition of

Henry Grossman, and Morris Grossman was again examined as a witness.

The evidence of these three witnesses, relating to the consideration which appellee claims was paid for the stock of goods contained in the Paris store, is substantially as follows:

Minzer testified that in 1922 he went to Russia for the purpose of bringing his family to the United States; that on his way over he stopped in New York, and there for the first time met Henry Grossman, identifying himself by a letter of introduction, from whom he then borrowed $2,000, and later, upon his return from Europe, an additional $1,000; and that thereafter, as a result of correspondence, but without any understanding to that effect at the time the money was borrowed, he transferred the stock of goods in question to Morris Grossman in satisfaction of this indebtedness to Henry Grossman.

According to Henry Grossman's deposition, in December, 1921, he advanced $2,000 to Minzer upon the latter's agreement to bring back from Russia to this country the former's family, and after several months elapsed Minzer came to see him again, and reported that all necessary arrangements had been made with the Soviet officials, but that it would cost an additional $1,300 to get Grossman's family to the United States, and that upon this representation such additional sum was advanced. Henry Grossman further testified that his family had never arrived; that he wrote to Minzer and demanded back the sums he had advanced, which, not being paid, he authorized Morris Grossman by letter at first to collect, and then to accept the stock of goods at Paris in satisfaction of, his claim against Minzer; that the only relatives he had in Russia or Europe were two married sisters, with whom he corresponded, and to whom, from time to time, he sent money.

Morris Grossman testified that he corresponded with his brother Henry, and with the latter's consent accepted the stock of goods in the Paris store for Minzer's debt. None of the correspondence, which it is claimed passed between these three witnesses, relative to Minzer's indebtedness, or the acceptance of the stock of goods in satisfaction thereof, was offered in evidence; the explanation being that all such correspondence had been destroyed. Both Minzer and Henry Grossman agree in the statement that the sums received by the former from the latter were delivered in cash, and were not

evidenced by notes or other written instrument.

At the conclusion of the final hearing, the District Court entered a decree dismissing appellant's bill of complaint.

[2] The appellee seeks to defeat recovery by a reliance upon section 67e of the Bankruptcy Act, on the ground that the bill of sale was executed more than four months prior to the filing of the petition in bankruptcy. In this connection it is argued that appellant's only right to avoid the sale was because it is in violation of article 3971, Revised Statutes of Texas, as amended in 1915 (Vernon's Ann. Civ. St. Supp. 1918, art. 3971), on the subject of sale of merchandise in bulk, in that the notices to creditors therein required were not given. It is true that section 67e (Comp. St. § 9651) provides that all conveyances made by a debtor within four months prior to the filing of a petition in bankruptcy against him, which are held null and void as against creditors by the laws of the state in which the property is situated, shall also be null and void in bankruptcy proceedings. But section 70e (Comp. St. § 9654) authorizes the trustee in bankruptcy to avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and to recover property so transferred, unless the person to whom it was transferred was a bona fide holder for value.

Under the Texas statute above cited, if there had not been an adjudication in bankruptcy, Minzer's creditors could have avoided the transfer to appellee and recovered the stock of goods. The appellee was not a bona fide purchaser, because he accepted a transfer prohibited by the state statute. Bankruptcy having intervened, the trustee could recover the goods, just as creditors could if there had been no bankruptcy proceedings. The limitation of four months prescribed by section 67e does not apply to transfers which may be avoided under section 70e of the act. If this were not so, an easy way would be provided by the Bankruptcy Act to avoid the effect of state statutes. Cooper Grocery Co. v. Penland, 247 F. 480, 159 C. C. A. 534; Baldwin v. Kingston (D. C.) 247 F. 163; Bush v. Export Storage Co. (C. C.) 136 F. 918; Riggs v. Price, 277 Mo. 333, 210 S. W. 420; 1 Fed. Stat. Ann. 1213; 3 R. C. L. 301; 2 Collier on Bankruptcy (13th Ed.) 1776.

Furthermore, we are of opinion that the transfer in question was fraudulent, and therefore avoidable under section 70e of the Bankruptcy Act. Appellant's evidence discloses the conveyance of a stock of goods of considerable value; an ostensible bankrupt purchaser, not yet discharged by the bankruptcy court, in the employ of the seller at a small salary, and therefore presumably without funds or resources; the absence of a present consideration; the withholding of the conveyance from the public records; no change in the name or conduct of the business; the shipment of goods without any record being made by the former owner, and a depletion of the stock of goods which he retained. In the absence of explanation this was evidence enough of a fraudulent transfer.

It is conceded that the conclusions of a trial court based upon evidence are entitled to great weight. However, in this case the only witness to appear in person and testify before the court upon the vital question whether the bill of sale was supported by a valuable consideration was the appellee, and his testimony is contradictory and lacking in candor. It was not considered sufficient to prevent the appointment of a receiver. While there is less disposition shown by this witness to conceal facts at the final hearing, yet no new or additional facts were then brought out which would strengthen his case. In the final analysis, appellee's title depends upon the credibility of Minzer and Henry Grossman, for, unless these two witnesses make it appear that a consideration was paid by the cancellation of a debt, there is no evidence of consideration. On its face, the evidence as to the existence of a debt, whatever the amount of it was, is incredible. Henry Grossman was in communication with his married sisters, who were the only members of his family who might desire to come to the United States, and no reason is suggested why money could not have been sent direct to them by their brother, instead of being sent indirectly by a stranger. That is the most favorable view to take of this evidence, which is contradicted by Minzer, who makes out of the transaction simply a loan from one stranger to another. It nowhere appears from the evidence that Grossman's sisters in Russia had ever expressed their desire or intention to come to the United States. It is beyond belief that Henry Grossman, a business man, would have parted with his money without requiring a note or some other written evidence of his claim, and that he would not have preserved the letters received by him from Minzer and the appellee.

The conclusions we reach upon the whole

evidence are that the bankrupt was the true owner of the stock of goods at Paris, and that he transferred his title thereto for the purpose of defrauding his creditors, and that the appellee is not a bona fide purchaser for value. If, upon a further hearing, the appellee can prove that any part of the stock of goods was bought and paid for with his own money, and not out of funds derived from the sale of goods received from the bankrupt, it would be proper for the trial court to order that the value of such goods be paid over to him. But, unless this can be done, the whole stock of goods should be turned over to the trustee in bankruptcy.

The decree of the District Court is reversed.