**In re GREENBERG.**

**No. 38181.**

District Court, E. D. New York.

July 21, 1942.

Robert C. Birkhahn, of Lawrence, L. I., N. Y., for bankrupt.

Duberstein & Schwartz, of Brooklyn, N. Y. (Max Schwartz, of Brooklyn, N. Y., on the brief), for objecting creditor.

GALSTON, District Judge.

An involuntary petition was filed against the bankrupt on December 13, 1939, and an adjudication followed on December 29, 1939. Specifications of objections to his discharge were filed on October 2, 1940, which, among other things, recited:

1. That the bankrupt failed to keep books of account from which his financial condition might be ascertained; that he failed to keep cancelled vouchers issued by him; that he failed to keep a record of monies received and disbursed by him during 1938 and 1939, from which his financial condition might be ascertained.

2. That the bankrupt within twelve months preceding the filing of the petition transferred, with intent to hinder, delay and defraud his creditors, property belonging to the bankrupt estate consisting of 55% of the stock of the Mercer Tube and Manufacturing Corp., of a value of approximately $250,000 without any adequate present consideration therefor.

3. That the bankrupt committed offences punishable by imprisonment in that he made a false oath in the schedules by omitting a debt to the Modern Industrial Bank in the sum of $1,500; that he had no occupation; that he had no money or property in trust, whereas in fact he held

290

$6,750 in trust for his wife, Hilda Greenberg, and that he had repaid no loans nor had he transferred any property within one year preceding the filing of the petition in bankruptcy.

4. That the bankrupt made false oath in the course of these proceedings in that he testified he had issued no financial statement, whereas in fact a financial statement was issued by him to the Modern Industrial Bank; that he had no bank account and had not had a bank account for more than a year preceding the filing of the petition, whereas he had accounts in the Bank of Manhattan Trust Company and the Sterling National Bank; that in the year 1939 and prior to the filing of the petition, he had issued a false statement in writing respecting his financial condition in order to obtain money on credit from the Modern Industrial Bank.

5. Finally that the bankrupt failed satisfactorily to explain losses of assets and to account for the discrepancy between his assets and liabilities, and the insufficiency of his assets of a nominal value to meet his liabilities in the sum of $198,941.-12.

The referee, summarizing the record before him, sustained all of the objections set forth in the specifications. Whereupon the petitioner, seeking a review of the referee's order of April 17, 1942, complains that the order was erroneous in that the "relinquishment" by the bankrupt of the stock of the Mercer Tube and Manufacturing Corp. for an inadequate consideration under duress was not a bar to his discharge in bankruptcy; that the petitioner's letter to the Modern Industrial Bank was not intended to constitute a financial statement and was not relied upon by the Bank in making a loan, and cannot constitute a bar to a discharge; that the records of the corporation in which petitioner was interested were not examined in this proceeding, and it was not shown that a proper examination would not have revealed a true situation of the corporation's or petitioner's interest therein; and that failure to schedule the Modern Industrial Bank was due to an oversight on the part of a stenographer and consequently should not bar his discharge.

The referee found, and the record supports him, that as at March 17, 1939, the bankrupt had no assets remaining other than his stock holdings in the Mercer Tube and Manufacturing Corp. and in the Central Herrick Corporation, and that at that time he owed several hundred thousand dollars, either directly or as an accommodation endorser. The stock of the Central Herrick Corporation had no value.

The bankrupt was an officer of the Mercer Tube and Manufacturing Corp. and received a salary of $15,000 annually. He had appropriated from the treasury of the company—he was a majority holder of the stock—the sum of $25,000, and had extended credit to various corporations in the amount of $30,000, which corporations apparently were supplying materials to other corporations with which he was associated. In consequence his fellow stockholders, having learned of these unauthorized appropriations and credits, demanded settlement from Greenberg. Accordingly he did assign his stock for the sum of $40,-000 upon threat of criminal prosecution. Since he had no other assets of substantial nature, he was left unable to meet liabilities to other creditors approximating $200,000. The value of the stock at the time of the transfer was apparently $200,-000, for the accountant for the corporation testified that the book value of the company's capital stock was $380,000, and Greenberg's holding was 55% thereof.

Our first inquiry, therefore, is whether the transfer of the stock in the circumstances related constitutes a transfer with intent to hinder, delay and defraud creditors of the bankrupt so as to prevent his discharge.

Presumably the objecting creditor relies on section 14, subdivision c(4) of the National Bankruptcy Act, 11 U.S.C.A. § 32, subdivision c(4), which provides that a ground of objection to discharge exists if the bankrupt, within twelve months before the date of his bankruptcy, transferred, destroyed or concealed or permitted to be removed or concealed, any of his property with intent to hinder, delay or defraud his creditors. In Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 132, 61 L.Ed. 419, the matter related to preferential transfers, and the court considered the question of intent as spelled out of the act of transfer of assets, for the court recognized that there is a distinction between the intent to prefer and the intent to defraud. Mr. Justice Brandeis pointed out that a transaction may be invalid both as a preference and as a fraudulent transfer, though it may be invalid only as a preference or only as a fraudulent transfer. In the present case

there can be no question that the bankrupt's obvious intent was to prefer the Mercer Tube and Manufacturing Corp. Did he of necessity intend also to defraud his other creditors? The referee having sustained the objection must have concluded that the bankrupt intended both to defraud his creditors, as well as to prefer the Mercer Tube and Manufacturing Corporation, because the loss of the stock left the bankrupt without any assets of value when at the time he had liabilities of $200,-000. In Dean v. Davis, supra, Mr. Justice Brandeis, speaking of the bankrupt, said:

"Jones knew that he was insolvent. He knew that he was making a preferential payment. He must have known that suspension of his business and bankruptcy would result from giving and recording a mortgage of all his property to secure a note which had matured before the mortgage was executed. The lower courts were justified in concluding that he intended the necessary consequences of his act; that he willingly sacrificed his property and his other creditors to avert a threatened criminal prosecution;"

See, also, Mitchell Co. v. Lawton, 3 Cir., 82 F.2d 689; In re Gurney, 2 Cir., 71 F. 2d 144; In re Richter, 2 Cir., 57 F.2d 159; In re Winik, D.C., 39 F.Supp. 3; and Seligson v. Sandner, D.C., 42 F.Supp. 415.

The bankrupt complains that a certain letter to the Modern Industrial Bank was prepared by the Bank and though signed by him, was not intended to constitute a financial statement within the meaning the Bankruptcy Act. The bankrupt testified that he never issued any financial statement to the Modern Industrial Bank, and that when he applied for the loan he did not give a financial statement. Nevertheless his application for a loan of $2,100 recites among other things that there were no judgments against him, and it was accompanied by a letter signed by the bankrupt, bearing date April 18, 1939, wherein he says that he is the owner of all the capital stock of the Central Herrick Corporation, which is constructing a three-story, forty-six family apartment house in Lawrence, and that he has a tentative commitment for the first mortgage of $190,000, that he expects the property to be completed by May 15, 1939, and more important, he adds: "My total personal liabilities do not exceed the sum of $1,000, and I am making the above statements knowing full well that you will rely upon them in the extension of credit to me." The fact is that at the time he filed this application for a loan of $2,100, together with the supporting statement of his financial condition, he was in debt to the extent of approximately $200,000. Accordingly it is no defense to assert that his application for a loan, and his signed letter of April 18, 1939, did not constitute a financial statement. Those were the documents on which he desired the bank to rely and they were his representations of his financial condition, and viewed from any standpoint constitute a financial statement for the purposes he had in mind.

The next assignment of error is that the records of the corporations in which the petitioner was interested were not examined in the discharge proceedings, and the assigned error further recites: "The specification of the objection as to records had been dismissed during the hearing. There is no basis for denying petitioner's right to a discharge on that ground."

It is true that at the hearing of April 30, 1941, there was consideration by the referee of specification 1(a) concerning the failure of the bankrupt to keep or preserve books, and he dismissed that item; but as to specification 1(b), that the bankrupt failed to keep or preserve and turn over to the trustee all cancelled vouchers issued by him and by the corporations with which he was identified to his order or representing payments made for his account for the years 1938 and 1939, and likewise failed to keep or preserve and turn over to the trustee a record of all monies received and disbursed by him during 1938 and 1939, from which the bankrupt's financial condition, his income and business transactions might be ascertained, the referee directed the bankrupt to produce such records in open court. Then there followed argument by the referee and statement by counsel that all of the books and records of these corporations and his books and records were in the office of his attorney, Robert C. Birkhahn. The record is obscure at this point because counsel for the bankrupt seemed to rely on a record in the first meeting of creditors held on July 31, 1940, and such record is not an exhibit in this proceeding. Nevertheless the referee dismissed this specification.

On the other hand, the decision of the referee of April 10, 1942 on which this petition to review is based, recites that he

sustains each and every objection contained in the objecting creditor's specifications. Apparently then, the referee must have re-considered his rulings in respect to specifications 1 and 2. He seems well advised to have done so for the books and records referred to were not produced in open court, and certainly the bankrupt cannot shift the burden with respect to the production of such books. Failure to keep personal books of account from which his financial condition could be ascertained would in itself be no ground of objection to discharge if the nature of his business did not require the keeping of such records, or indeed, if he were able, with independent records of corporations with which he was associated, or otherwise, to supplement the data disclosed in his informal records of financial transactions. Certainly, however, the burden is upon him to show that, from all available data however informal, his financial condition could be ascertained. See In re Herzog, 2 Cir., 121 F.2d 581; In re Muss, 2 Cir., 100 F.2d 395; and particularly White v. Schoenfeld, 2 Cir., 117 F.2d 131, in respect to the burden of proof.

The final assignment of error is: The failure to schedule the Modern Industrial Bank as creditor was shown, without challenge, to have been due to an oversight on the part of a stenographer and no material omission from a statement of affairs was shown. The unintentional and inadvertent omission is insufficient to bar the petitioner's right to a discharge.

This assignment relates only to subdivision (a) of specification 3. The attorney for the bankrupt testified that the bankrupt furnished him with data which included reference to the Modern Industrial Bank as a creditor, but that in the preparation of the final form of the schedules the listing of the debt was inadvertently omitted. Nevertheless these schedules were examined by the bankrupt, who verified them after making corrections, and no question was raised by him in respect to his account with the Modern Industrial Bank. All this may be properly explained by the inadvertence of someone—of the clerk in the attorney's office, of the bankrupt himself—but it nevertheless is of more than passing significance that payments were made to the Modern Industrial Bank on the pending loan during the year 1939. Moreover the bankrupt admitted that he had had correspondence with respect to the payment of his obligation in November and December of 1939, immediately preceding the filing of the petition against him, that he had written to the bank after the filing of the petition about payment, and indeed that he made payments to the bank after the filing of the petition in bankruptcy and prior to the filing of the schedules in the amount of $50 on February 1, 1940, and $50 on March 5, 1940. The explanation of the failure to list the claim is not acceptable.

Accordingly the assignments of error in the bankrupt's petition must be overruled; and the motion to dismiss the petition and for an order affirming in all respects the order of the referee denying a discharge granted. Settle orders on notice.