Harold Baer, J.
This is an action by the trustee in bankruptcy of Max Ettlinger Go., Inc. (hereinafter referred to as the “ corporation”) for recovery of moneys allegedly paid to the defendants or through them preferentially during the time period from January 1, 1957 to April 9, 1958, to the damage of the creditors. The action against Paul Ettlinger (hereinafter referred to as “ Paul ”) and Frieda (hereinafter referred to as “ Frieda ”) was brought under section 15 of the Stock Corporation Law of the State of New York and section 60, subdivisions 1 and 2, of the General Corporation Law of the State of New York. The action against Ellen Ettlinger (hereinafter referred to as “ Ellen ”) was brought under the Fraudulent Conveyance Act of the State of New York (Debtor and Creditor Law, §§ 273, 276). I shall dispose of the action against each of the defendants separately.
The purpose of section 15 of the Stock Corporation Law is not punitive, hut is directed primarily to the conservation of the estate of an insolvent for the benefit of its creditors (Matter of Fred Stern & Co., 54 F. 2d 478, 480 [C. C. A. 2d]).
The rule is uniform that in order to effect a recovery under sectioh 15 of the Stock Corporation Law it is necessary for the plaintiff to establish that the insolvency existed or was imminent at the time the transfers or payments were made; that the transfers or payments tesulted in a preference; that the transferee, at the time the transfers or payments were received, had notice dr reasbnable cause to believe that the transfers would effect a preference; that an intent existed to give a preference to the transferee; and; finally, that such transfers resulted in a loss to the creditors (Irving Trust Co. v. Chase Nat. Bank, 72 F 2d 668 [C. A. 2d]; Van Schaick v. Title Guar. & Trust Co., 252 App. Div. 188; Haberman v. Larens Corp., 35 N. Y. S. 2d 533).
*771 An action may be brought under section 60 of the General Corporation Law against one or more of the directors or officers of a corporation, (1) “ to compel [them] to account for their official conduct, including any neglect of or failure to perform their duties, in the management and disposition of the funds and property, committed to their charge and (2) “ to compel them to pay to [corporations] * * * creditors any money » •::= =» they have acquired to themselves, or transferred to others * e i! by or through any neglect of or failure to perform or other violation of their duties.”
It is admitted that, during the time period in question here, the corporation was insolvent.
Applying these principles to the ease against Paul, the record clearly establishes his liability under section 15 of the Stock Corporation Law and section 60 of the General Corporation Law. During the time period January 1, 1957 to April, 1958, and for some time prior thereto, he engaged in a series of financial manipulations the net result, of which was to divert a considerable sum of money to his personal use. While he has urged in Ms defense that most of these withdrawals were for legitimate business purposes in order to continue the operation of the corporation, I am convinced that they were not. Nor does the proof in any way indicate that this is a situation where the payments made were made in a good faith belief that the corporation, though insolvent, would thereby be relieved of financial embarrassment and enabled to enter a more prosperous career in the course of which all creditors would be paid (cf. Paulding v. Chrome Steel Co., 94 N. Y. 334; Bielaski v. National City Bank of N. Y., 58 F. 2d 657, 660; Matter of Fred Stern & Co., supra).
The assets of a corporation are a trust fund for the payment of its debts, upon which the creditors have an equitable lien as against stockholders and all transferees except those purchasing in good faith for value (Hurd v. New York City Steam Laundry Co., 167 N. Y. 89, 95; Cole v. Millerton Iron Co., 133 N. Y. 164, 168; Bartlett v. Drew, 57 N. Y. 587). Paul’s diversion of corporate funds to his own personal use was a flagrant dereliction of his duty as a director and officer and a violation of his trust to preserve the corporate assets for the benefit of the corporation’s creditors (Evcrett v. Phillips, 288 N. Y. 227, 232).
The general rule of damages in a case such as this is that a plaintiff may recover the amount of money which he would have received if no preferential payments or transfers had been made and if the corporation’s assets had been distributed to all its creditors in proportion to the respective amounts of their just claims (Pennsylvania R. R. Co. v. Peddrick, 234 F. 781, 786; *772 Curran v. Oppenheimer, 164 App. Div. 746, affd. 222 N. Y. 615; Shaw v. Jewel Radio Corp., 6 A D 2d 707, 708).
Turning now to the question of damages, I find that the following were preferential payments for which Paul is liable under section 15 of the Stock Corporation Law:
(a) The payment of $5,200 to one Hamel on behalf of Hamet Trading, Inc. (a corporation in which Paul had a 50% interest). The fact that the corporation was allegedly indebted to Hamet Trading, Inc., in an amount in excess of $5,200 is of no consequence.
(b) The payments made to Hamet Trading, Inc. These total $21,827.23. However, I will allow a credit in the amount of $6,300.37 representing payments for merchandise received by the corporation, leaving a balance of a preferential payment in the amount of $15,526.86.
(c) The payment of $7,000 to one Oscar M. Kowal, by check dated March 13, 1957 and which was deposited June, 1957, allegedly in repayment of the loan made to the corporation in January, 1957.
The intent to prefer these creditors is manifest in that Paul knew that at the time the payments were made the corporation was insolvent and that the net result would be that the other creditors would not be paid their fair prorata share of the corporation’s assets (New York Credit Men’s Assn. v. Hasenberg, 26 F. Supp. 877, affd. 107 F. 2d 1020, certiorari denied 309 U. S. 666). The same result would follow if Paul did not have a one-half interest in Hamet Trading, Inc., and thereby did not benefit by the transactions (New York Credit Men’s Assn. v. Hasenberg, supra; Pennsylvania R. R. Co. v. Peddrick, supra). Appropos these payments, it again should be noted that there is nothing in the record to make them reasonably susceptible to the interpretation of having been made in good-faith belief that the corporation would thereby be enabled to continue business, prosper and meet its obligations to the other creditors (Paulding v. Chrome Steel Co., supra; Bielaski v. National City Bank of N. Y., supra; Matter of Fred Stern & Co., supra).
As to other payments made to Oscar M. Kowal, there is no convincing proof that they were not made in the regular course of business and for legitimate corporate expenses. Insofar as the payments made to Frieda are concerned, I find that there is no liability on Paul’s part. The basis for my so holding will be found below in my treatment of the case against her.
Considering only those payments admittedly made by Paul to himself, in his notice to admit, and allowing credit for reasonable and justified business expenses as well as an alleged *773 exchange of $3,200,1 find that he has diverted to his own use the sum of $14,906.98. In addition he has diverted the sums of $1,792, $3,200, $7,100 and $720, making a total of $12,812. These sums were apparently paid into Paul’s personal brokerage account with Neuberger, Loeb & Co. Finally, I find that from January 1,1957 to the time of bankruptcy he diverted to his own use the sum of $9,499.85, drawing this sum as loans and expenses, over and above his salary. Completely unreasonably and unjustifiedly he increased by $50 each week his drawings over and above salary. For tax and bookkeeping purposes, he characterized these drawings as a “ loan ” from the corporation to himself. To increase his salary at a time when the corporation was insolvent and heavily in debt was such a flagrant abuse of his fiduciary duty as an officer and director as to require no cited authority for charging him with the full amount of the drawings over and above his salary.
In all, Paul diverted to his own use $37,218.83. To this must be added $27,726.86 representing preferential payments for which he is liable, making his total liability the sum of $64,945.69. The defendant claims credit against this amount, but the only item satisfactorily explained by this defendant and his accountant is $9,205 actually deposited in the corporation bank account and borrowed by Paul from his New York Life Insurance Company policy. Giving him credit for this item, his liability to the plaintiff is reduced to $55,740.69.
Recovery against Frieda is sought under subdivisions 1 and 2 of section 60 of the General Corporation Law of the State of New York and section 15 of the Stock Corporation Law of the State of New York. I have already discussed the applicable principles of section 15 of the Stock Corporation Law above.
I shall now turn to section 60 of the General Corporation Law. A director or officer of a corporation is liable under section 60 where he participates in an illegal transaction or transfer or permits it to take place with active knowledge of its occurrence (Arthur v. Griswold, 55 N. Y. 400; Van Schaick v. Aron, 170 Misc. 520, 534; Brinckerhoff v. Bostwick, 88 N. Y. 52). He is similarly liable where he permits an illegal act to occur through failure to exercise ordinary prudence in ascertaining facts that a diligent director would know (Brinckerhoff v. Bostwick, supra; Van Schaick v. Aron, supra). However, the status of a director in and of itself does not establish liability (Arthur v. Griswold, supra). Each case is sui generis with respect to the negligence of a director and the degree of care required necessarily depends on the facts of the particular case (Broderick v. Horvatt, 148 Misc. 731, 733; Van Schaick v. Aron, supra).
*774 Frieda was the aged mother of Paul Ettlinger. After the death of her husband (Max Ettlinger), Paul went into the business and took up where his father left off. Frieda was a stockholder, director and officer of the corporation. However, as far as the evidence in this case reveals, she was a director and officer in name only. While there is some testimony that from time to time she appeared at the offices of the bankrupt corporation, there is no evidence that she ever participated in its affairs or in any way controlled or conducted the business of the corporation. On the contrary, all of the business of the corporation was in fact controlled and conducted by Paul. While the fiduciary responsibilities of corporate directors and officers should never be minimized, the courts should not, on the other hand, shut their eyes to the realities of business life. It has been held with justification in this State that a closed family corporation is not expected to be conducted by its officers, directors and stockholders with the same degree of care and responsibility as those of a large public corporation (Barkin Constr. Co. v. Goodman, 221 N. Y. 156, 161; Hughes v. W. O. Hughes Coal Co., 175 N. Y. S. 2d 478, 484; Railroad Co. v. Lockwood, 17 Wall. [84 U. S.] 357, 382).
Applying the above principles of law to the cause of action against Frieda, I find that the plaintiff has failed to prove that Frieda was liable under section 60, subdivisions 1 and 2, of the General Corporation Law.
With respect to Frieda’s liability under section 15 of the Stock Corporation LaAv as a transferee of the assets of the corporation with knoAvledge of its insolvency, I find that during the time period in question Frieda loaned more to the corporation than was paid out to her in the form of repayment of loan, salary or alleged business expenses. There can be no liability under section 15 of the Stock Corporation LaAv Avhere there is no proof that the corporation’s assets have been so diminished as to deprive creditors of their fair proportionate distributive share (Pennsylvania R. R. Co. v. Peddrick, supra; Curran v. Oppenheimer, supra; Shaw v. Jewel Radio Corp., supra).
Accordingly, the cause of action against Frieda is dismissed.
Plaintiff’s cause of action against Ellen is based on the New York State Fraudulent Conveyances Act (Debtor and Creditor Law, §■§ 273, 276).
In order for a conveyance to come Avithin section 273, Avhieh defines as a matter of tew what constitutes a fraudulent conveyance, a debtor must have been solvent before the transfer, must have been rendered insolvent by reason of having made the transfer and the transfer must have been made without fair *775 consideration (Stokes Coal Co. v. Garguilo, 255 App. Div. 281, affd. 280 N. Y. 616; Prudential Sav. Bank v. Grant, 99 N. Y. S. 2d 602, 603).
For a conveyance to constitute a fraud as a matter of fact (Debtor and Creditor Law, § 276), it must be made with actual intent to hinder, delay or defraud present or future creditors. There can be no fraudulent conveyance as a matter of fact where there is no resultant diminution of value of the assests or estate of the debtor which remains available to creditors (Prudential Sav. Bank v. Grant, supra; 1 Glenn, Fraudulent Conveyances and Preferences [rev. ed.], § 195, pp. 347 et seq.). “The test [of a fraudulent conveyance] * * * is whether, as a result of the debtor’s operations * * * the creditor loses by reason of finding less to seize and apply to his claim ” (1 Glenn, op. cit., supra, p. 348). An intent in this instance is shown where the proof indicates that at the time of making the transfer the officer or director of the corporation knew it would result in other creditors not being paid their fair prorata share of the assets (New York Credit Men’s Assn. v. Hasenberg, 26 F. Supp. 877, supra).
Applying these principles to the defendant Ellen, I find that the proof clearly shows that during the time period in question Ellen loaned more to the bankrupt corporation than was paid out to her. Plaintiff’s counsel has argued that the money used by Ellen to make loans to the bankrupt corporation came through her husband Paul, from the funds of the bankrupt. There is no proof of this allegation and no such inference may be drawn from the evidence.
Accordingly, the complaint against Ellen is dismissed.
Counterclaims of the three defendants have been disregarded. They are not proper counterclaims against this plaintiff. If so advised, such claims may be pursued in the bankruptcy proceeding.
Judgment for Frieda Ettlinger and Ellen Ettlinger dismissing the complaint as against them. Judgment for the plaintiff against the defendant Paul Ettlinger in the sum of $55,740.69 with appropriate interest.
Ten days’ stay, 60 days to make a ease.