Leonard S. LEVENTHAL, Trustee in Bankruptcy of the Estate of Robert Spillman, Bankrupt, Plaintiff,

v.

Robert SPILLMAN, Selma Spillman and Safe-Tee Banisters, Ltd., Defendants.

No. 60 C 899.

United States District Court
E. D. New York.

Sept. 29, 1964.

Solomon B. Terkeltoub, New York City, for plaintiff.

Eli Wager, Mineola, N. Y., for defendants.

DOOLING, District Judge.

The plaintiff trustee in bankruptcy sues to set aside as fraudulent the bankrupt's conveyance in bulk to a newly formed corporation, all the stock of which was acquired by his wife, of all his business assets in return for the corpora-

tion's agreement to pay the bankrupt's business debts but none of the bankrupt's numerous other creditors. The principal defenses are that the conveyance as a bulk "sale" was perfected in compliance with the Bulk Sales Act (former New York Personal Property Law, McKinney's Consol.Laws, c. 41, § 44) and that the transfer was not fraudulent in fact (as required by New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 276) but, at worst, simply preferential of one class of creditors and unassailable because consummated more than four months before bankruptcy. It is concluded that the transfer was a fraudulent conveyance under Section 276 of the New York Debtor and Creditor Law and must be set aside.

The facts, separately found, disclose that in February 1956 the bankrupt was deeply insolvent. He was then in the business of making and selling ornamental railings; his business had shown a loss in 1955 of about $13,000 after deducting the bankrupt's "drawings" of $6,300, but his insolvency had arisen mainly from a dissociated and calamitous promotional venture. The ornamental railing business seemed worth saving and so a plan was developed among the bankrupt, his wife, and a committee of the creditors of the railing business to perpetuate that business for their benefit to the exclusion of the remaining creditors.

The plan was boldly simple. The bankrupt in February 1956 transferred all the assets of his railing business to a newly formed corporation in exchange for its promise to pay the $12,400 of the bankrupt's business debts at the rate of ten percent a month, starting December 1, 1956, and to pay, in addition, the bankrupt's withholding tax liabilities. The total indebtedness of the bankrupt at the time was about $125,000.

The transferee corporation had no assets other than those received from the bankrupt except $2,500 which the bankrupt's wife borrowed to put into it. The bankrupt's wife lent $2,000 of the borrowed money to the new company and, with the remaining $500, acquired all its capital stock. The consent of the business creditors to the transfer and to the deferment of their debts was conditioned on the payment of the $2,500 into the new company by the bankrupt's wife.

The transfer was a bulk sale and the new company complied with the Bulk Sales Act, former New York Personal Property Law, § 44. The new company gave advance notice of the sale to all the bankrupt's creditors and disclosed in the notice the terms of the proposed sale, giving the names and the amounts of the claims of the relatively few creditors who were being promised payment.

The bankrupt and his wife both were directors of the new company from its inception. The bankrupt's wife became its president; the bankrupt worked for it as a salesman. Husband and wife were each paid $75 weekly as salary. Starting in March 1956, the bankrupt's wife commenced repaying the loan of $2,500 at the rate of $100 a month; the funds to do so were derived from the salary the new company paid her. A part of the wife's salary was also used to maintain the couple's home; the indication of the evidence is that the couple's salaries from the new company were the support of their home.

Later on the new company by negotiation with the business creditors substantially scaled down its liability on the assumption of the bankrupt's debts. Meanwhile, in the balance of the year 1956 the new company about broke even in the railing business, after paying $7,850 in salary to the bankrupt and his wife. There is no indication in the evidence of how the new company fared later.

The evidence is not adequate to support any definite finding about the value of the property transferred to the new company or the total enterprise value that the business represented viewed not as properties only but as a going concern. The book value of the properties (with the tangibles at cost before depreciation) was about $11,300 but that

figure excludes any values for good will, trade names and marks, and going concern value, and no evidence of their value was presented. The evidence of record, in consequence, does not establish that the assumption of the business debts by the new company was not a fair consideration.

▇▇▇ The compliance with the Bulk Sales Act is quite beside the point of the action. The conveyance is challenged as a fraudulent conveyance, not as a transfer in disregard of the Bulk Sales Act. An arrant fraudulent conveyance can be carried out in full compliance with the Bulk Sales Act for the Act requires only that, in advance of consummating the sale, the seller supply the buyer with a detailed inventory at cost of the property and a complete list of creditors and that the buyer notify each listed and known creditor of the proposed sale and its price, terms and conditions. The Act contains no substantive requirements at all: the consideration may be inadequate, the seller insolvent, the terms of sale such as to delay all creditors in the collection of their claims, and yet the Act may be fully complied with, simply by making the statutory disclosures; it is a notice statute and the creditors are expected, when notified, to attack the transfer for what it is by their appropriate remedy if the transfer, substantively, violates their rights as creditors. 1 Glenn, Fraudulent Conveyances (Rev. Ed.1940) 547; Gross v. Grossman, 5th Cir. 1924, 2 F.2d 458; In re Baker, S. D.Cal.1926, 13 F.2d 413, 414. Here, for example, the transfer was a studied preference and, by that fact, an act of bankruptcy (Bankruptcy Act, § 3, sub. a(2), 11 U.S.C.A. § 21, sub. a(2)) and an avoidable preference if bankruptcy came within four months (Bankruptcy Act, § 60, 11 U.S.C.A. § 96). In consequence the cases reflect repeated and emphatic statements that compliance with the Bulk Sales Act does not purge a fraudulent conveyance and that a bulk sale cannot be used as if it were a substantively competent species of insolvency procedure. Sterling National Bank & Trust Co. v. Complex Dresses, Inc., 1st Dept. 1934, 240 App.Div. 57, 269 N.Y.S. 110; Lubinsky v. Hoffman, Bronx Co., 1934, 158 Misc. 261, 284 N.Y.S. 549, aff'd, 1st Dept. 1936, 246 App.Div. 803, 285 N.Y.S. 1074; Delta Trading Corp. v. Kohn & Son, Inc., N.Y.Co.1961, 28 Misc. 2d 894, 215 N.Y.S.2d 607.

▇▇ The transfer is attacked under sections 273 and 276 of the New York Debtor and Creditor Law (Sections 4 and 7 of the Uniform Fraudulent Conveyance Act). The transaction is invulnerable to attack under Section 273 because, although the bankrupt was insolvent when the transfer was made, the transfer has not been shown to have been made without a fair consideration. There was not here free transfer of an equity in encumbered property; the assumption of debt was express, the face amount of debt assumed exceeded the book value of the property and the new money, although borrowed, was real enough and added something of substance to the assumption. On such facts, in the absence of countervailing evidence of value, inadequacy of consideration is not shown.

▇▇▇ The transfer was, however, fraudulent in fact under § 276 for it was made with actual intent to hinder, delay or defraud the bankrupt's creditors. The term "fraudulent conveyance" embraces much more than unreal, seeming transfers that leave the transferor in covert but real possession of his property. Greenwald v. Wales, 1903, 174 N.Y. 140, 143–145, 66 N.E. 665. If the dicta in Cooper v. Maurer, Sup., N.Y.Co.1942, 37 N.Y.S.2d 992 are read as requiring a transaction to be sham or fictitious if it is to fall under the denunciation of Section 276, the dicta do not express New York or general law.

The transfer hindered and delayed, and was meant to hinder and delay, all the creditors of the bankrupt whose debts were not assumed. The bankrupt's assets were removed from their reach irrecoverably. The transfer was, characteristically, a calculatedly preferential transfer. Every preference to some ex-

tent hinders, delays and defrauds creditors (Irving Trust Co. v. Chase Nat. Bank, 2d Cir. 1933, 65 F.2d 409, 410–411) but, because of the supposed "right" of a debtor to prefer his creditors, it is said that if a transfer hinders and delays some creditors only in virtue of its preferring other creditors, it is not a fraudulent conveyance. Irving Trust Co. v. Kaminsky, S.D.N.Y.1937, 19 F. Supp. 816. The rule is defended on the ground that a single creditor's suit under Section 276 (or any analogous successor of the Statute of Elizabeth of 1571) would simply shift the preference from one creditor to another (Irving Trust Co. v. Kaminsky, supra; 1 Glenn, Fraudulent Conveyances (Rev. ed. 1940) 488–489), an argument that appears to underestimate the resources of courts proceeding on equitable principles (see, e. g., White v. Cotzhausen, 1889, 129 U.S. 329, 345, 9 S.Ct. 309, 32 L.Ed. 677; contrast North American Car Corp. v. Shell Petroleum Corp., 10th Cir. 1937, 91 F.2d 564, 568) and to overlook the practical importance of the frequent vesting in bankruptcy trustees under section 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e, of creditors' rights to set conveyances aside as fraudulent under state law.

■ Whatever may be the precise limits on setting preferential transfers aside as *per se* fraudulent, New York has been of all the states one of the most inhospitable to the preference. Cf. Merillat v. Hensey, 1911, 221 U.S. 333, 343–344, 31 S.Ct. 575, 55 L.Ed. 758, 36 L.R.A.,N.S., 370. A preferential transfer in trust for the benefit of chosen creditors is fraudulent in New York if the creditor in form reserves to himself any surplus after execution of the trust is complete, even though the "surplus" right is valueless (Collomb v. Caldwell, 1857, 16 N.Y. 484; · Barney v. Griffin, 1849, 2 N.Y. 365) and even though reservation of the "surplus" right is inadvertent and is formally relinquished by supplementary instrument. Sutherland v. Bradner, 1889, 116 N.Y. 410, 22 N.E. 554. To be tolerated a preferential

transfer must leave any potential surplus over the preferred debts fully executionable so that the other creditors are not hindered or delayed in their rights. Leitch v. Hollister, 1850, 4 N.Y. 211. New York's law governing assignments for the benefit of creditors forbids any preferences except for wage claims in general assignments and provides for authorizing the assignee to recover preferences given within four months of the assignment. Debtor and Creditor Law, § 15, subd. 6–a, § 23. Under New York's insolvent debtors law the debtor cannot be discharged if, while insolvent, he gave a preference. Debtor and Creditor Law, § 74, subd. 2. And, in the corporate context, where Section 15 of the Stock Corporation Law, McKinney's Consol. Laws, c. 59 formerly applied, preferences appear almost automatically to have been regarded as fraudulent conveyances. Beol, Inc. v. Dorf, N.Y.Co.1959, 22 Misc. 2d 798, 193 N.Y.S.2d 394, aff'd, 1st Dept., 1960, 12 A.D.2d 459, 209 N.Y.S.2d 267; Newfield v. Ettlinger, N.Y.Co.1959, 22 Misc.2d 769, 194 N.Y.S.2d 670, 678; Bachner v. Robinson, 2d Cir. 1939, 107 F.2d 513, 515; New York Credit Men's Assn. v. Hasenberg, S.D.N.Y.1938, 26 F.Supp. 877, aff'd, 2d Cir. 1939, 107 F. 2d 1020.

■ There certainly is no principle, then, that being a preference precludes being a fraudulent conveyance and the narrow principle, if it really exists today, is that if a transfer is subject to criticism solely because it is a preference, then it is not by that fact standing all alone also and automatically a fraudulent conveyance. The New York corollary is that only a little more than the bare preference will suffice to tip the scale against the transfer, and that "little more" can be a formal defect. Here, much is present in addition to the preferential effect. In form nothing was reserved upon the transfer to the bankrupt but two things were done that preclude treating the transaction as a permitted preference of a class of creditors. First, the property was not transferred to the creditors or for their unrestricted

benefit because the surplus, if any, in it was reserved by the nature of the transfer to the new company and the stock of that company was detained from the creditors and placed in the hands of the bankrupt's wife against whom the creditors had no rights. Second, the bankrupt and his wife reserved to themselves the management and operation of the property of the new company and positions of profit in its employment. Cf. Billings v. Russell, 1886, 101 N.Y. 226, 229–230, 4 N.E. 531.

The wife's payment of $2,500 into the new company for its stock and as a loan avail nothing. The wife invested in something, not in nothing, and it is the preexisting something in which she invested to the exclusion of the unprovided-for creditors that was lost to the creditors. The favored creditors' insistence on the payment emphasizes the exclusion of the disfavored creditors and underlines the existence of salvageable values in the business transferred to the new company.

Nor is the fact, if it be such, that the bankrupt and his wife both rendered service to the new company any answer to the significance of the reservation to them from the creditors of positions of profit in the new company. They diverted to themselves the use of the properties of the new company to produce the gross profits so large a part of which was paid to them as salaries.

■■■ That the values reserved and diverted may not be large or measurable is not material. Even a notional detention of potential executionable value from the creditors is enough where inherently the preferential nature of the arrangement has already given it the necessary effect of hindering, delaying and defrauding the disfavored creditors. Where intended preference is present, there can be no reservation to the transferor or to a third party; such third party intervention brings no privilege of retention based on new value where the whole scheme is designed to prefer one class of creditor and preclude the rights of another class. Cf. Dean v. Davis, 1917,

242 U.S. 438, 444, 37 S.Ct. 130, 61 L.Ed. 419; Lovett v. Faircloth, 5th Cir. 1925, 10 F.2d 301. Cf. In re Greenberg, E.D. N.Y.1942, 46 F.Supp. 289, 290–291.

While Perkins v. Becker's Conservatories, Inc., 1945, 318 Mass. 407, 61 N.E.2d 833 arose under Massachusetts law, its striking similarity on the facts to the present case, and its clear conclusion that the transaction was a fraudulent conveyance, support the conclusion here arrived at.

■■■ The discharge of the bankrupt, it is well settled, is no defense to the present sort of suit: the property transferred is its object, not the exaction of payment for the creditors from the bankrupt personally. In re Pierce, N.D. N.Y.1900, 103 F. 64; Rice v. Chapman, 1st Dept. 1932, 234 App.Div. 279, 255 N.Y.S. 35; Annotation 109 A.L.R. 427.

Plaintiff is entitled to judgment setting the conveyance aside as fraudulent.